**PALMER DODGE, INC., Appellant–
Defendant,**

v.

**Iswatu LONG, Appellee–Plaintiff.**

**No. 49A02–0211–CV–905.**

Court of Appeals of Indiana.

July 15, 2003.

Charles R. Sheeks, Sheeks Ittenbach Johnson Trettin & Koeller, Indianapolis, IN, Attorney for Appellant.

Taffanee Woods–O'Neal, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Palmer Dodge, Inc. appeals the trial court's order, after a trial to the bench, on the complaint for criminal conversion brought against it by Iswatu Long.

We affirm.

### ISSUE

Whether the trial court erred in ordering Palmer Dodge to pay Long's attorney's fees in the amount of $3,500.

### FACTS

On December 2, 1998, Long completed a credit application and submitted it to Palmer Dodge because she wanted to buy a 1997 Plymouth Breeze from Palmer Dodge. On December 10, 1998, Long and Palmer Dodge entered into a purchase agreement—whereby Long agreed to purchase the Breeze from Palmer Dodge—and they also executed a motor vehicle retail installment contract and security agreement as to the transaction. Both documents indicated that the contract was being assigned to Tranex Credit Corp. Long traded-in her 1992 Sunbird, valued at $1740 with a "balance owed" of $1,739.61, (Ex. A), made a $1,000 cash deposit, and took the Breeze home that same day, December 10, 1998. Shortly thereafter, Palmer Dodge paid off the $1,739.61 lien on Long's trade-in vehicle.

Then, on December 28, 1998, the following events took place. Tranex informed Palmer Dodge that it would not accept Long's application and finance her purchase of the Breeze. Palmer Dodge notified Long that she would have to submit a new credit application and that financing could be obtained at a higher rate of interest. In the meantime, Palmer Dodge went to Long's residence and repossessed the Breeze from her driveway. Long went to the Palmer Dodge office, where she was advised that (1) in order to keep the Breeze, she would have to sign for new financing at a higher rate, or (2) she could take back her trade-in vehicle upon paying $760 (the difference between the money Palmer Dodge had paid to satisfy the lien and her $1,000 down payment). Long refused to sign the new credit application because she could not afford higher payments, and she did not have the $760 to get her trade-in vehicle back. Long told them she wanted her car and her down payment back. Palmer Dodge refused, and Long was left without any vehicle and out $1,000.00 for the down payment.

On January 8, 1999, Long filed a complaint against Palmer Dodge alleging conversion and seeking treble damages, costs, and attorney's fees. Palmer Dodge filed a counterclaim, demanding that Long pay the balance of the contract purchase price for the Breeze and its attorney's fees.

A bench trial was held on August 20, 2002. The trial court heard testimony from the president and general manager of Palmer Dodge, Gary Hoffman. According to Hoffman, it was rare that a customer was given possession of a car and then financing was subsequently rejected. Hoffman believed that the contract provided

> that if for some reason that we don't get them financed, they need to bring the car back. And then they should get their trade-in back, if there was a trade-in, as long as there's been no payoff made or anything like that. It basically says that the contract is not good and everyone needs to get back to where they were.

(Tr. 21). Hoffman admitted that Palmer Dodge had already paid off the lien on Long's trade-in when it learned that Tra-

nex would not finance Long's purchase of the Breeze. Hoffman also admitted that after December 28, 1998, Palmer Dodge sold the Breeze at a price $557 higher than that originally charged Long and sold Long's trade-in vehicle for $800.

In addition, Hoffman testified that Palmer Dodge used an "I Understand" document, and Long testified that she had signed the one entered as an exhibit. That document states that if Palmer Dodge is not able to obtain financing for Long within thirty days at the interest and payment amount specified on the retail installment contract,[1] Long "will return the vehicle to" Palmer Dodge and she "will be entitled to receive a full refund of [her] down payment and trade-in." (Ex. 6). Long also testified that after the repossession, she was without a vehicle and had to rent one for three weeks at a cost of $24 per day.

The trial court took the matter under advisement to review all of the exhibits. On October 1, 2002, the trial court issued its order. It noted that the contract of December 10, 1998 provided:

Purchaser and Dealer intend that this contract will be assigned by Dealer to a bank or other credit lender. In the event Dealer is unable to assign this contract for any reason, including a payment amount change, within (2) days of the date hereof, all contracts between Purchaser and Dealer shall, at Dealer's option, be null and void and Purchaser, immediately upon notice by Dealer, shall either return the vehicle described herein to Dealer or pay to Dealer the unpaid balance of the cash price thereof. If Purchaser returns the vehicle, Dealer shall refund all deposits made by the Purchaser, less the cost of repair of any damage occurring to the vehicle while in Purchaser's possession, and less the sum of thirty cents ($.30) for each mile said vehicle has been driven in excess of one hundred (100) miles.

(App.7). The trial court found that

prior to final acceptance of [Long] by a finance company, [Palmer Dodge] decided to pay off the balance on [Long]'s automobile in the amount of $1,760.00, thereby assuming the risk that [Long]'s financing might not be ultimately approved and that [Palmer Dodge] would be in a position where it might want to avoid the contract between the parties.

(App.8). The trial court further found that if Palmer Dodge elected "to void the contract between the parties, [Palmer Dodge] should have been prepared to return [Long]'s trade-in vehicle and down payment," but Palmer Dodge's "premature payment" of [Long]'s outstanding balance on her trade-in vehicle had led to its "subsequent refusal to return that vehicle without being reimbursed." (App.9).

The trial court then found that Palmer Dodge was entitled to reimbursement for its $1,760 payment on behalf of Long on her trade-in vehicle, but the reimbursement should be adjusted to reflect Palmer Dodge's "benefit of the $1,0000 down payment by [Long], $800 from the sale of [Long's trade-in] vehicle, and $557.00 of additional income from the resale of" the Breeze. (App.9). Accordingly, the trial court granted judgment to Long in the amount of $597 actual damages and her car rental costs of $504, for a total judgment of $1,101, and it further ordered Palmer Dodge to pay Long's attorney's fees in the amount of $3,500.

### DECISION

■ Palmer Dodge argues that the trial court erred in awarding attorney's fees to

---

1. 21% and $304.63 monthly for 60 months.

Long because the trial court did not expressly find, and there is not sufficient evidence in the record to support a finding, that Palmer Dodge committed criminal conversion. We disagree.

When we address a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the evidence. *Schultheis v. Franke,* 658 N.E.2d 932, 933 (Ind.Ct.App.1995), *trans. denied.* Rather, we consider only the evidence most favorable to the judgment, and if substantial evidence of probative value supports the judgment, it will not be set aside. *Id.*

The criminal conversion statute states that one "who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." IND.CODE § 35–43–4–3. The definition of "control over property of another" that is "unauthorized" includes the exertion of control "in a manner or to an extent other than that to which the other person has consented." I.C. § 35–43–4–1(b)(2).

■ The Indiana crime victim's relief act provides that a person who suffers a pecuniary loss as a result of a violation of the criminal conversion statute

> may bring a civil action against the person who caused the loss for the following:
>
> (1) An amount not to exceed three (3) times the actual damages of the person suffering the loss,
>
> (2) The costs of the action.
>
> (3) A reasonable attorney's fees.
>
> . . . .

I.C. § 34–24–3–1. A victim claiming relief under the act must prove by a preponderance of the evidence all elements of the alleged criminal conversion, including the requisite criminal intent. *Gilliana v. Paniaguas,* 708 N.E.2d 895, 899 (Ind.Ct.App. 1999), *trans. denied.*

■ Palmer Dodge argues that it cannot be found to have criminally converted Long's trade-in vehicle because it held a reasonable, good faith belief that its possession was authorized. Whether such a belief was reasonable is a question of fact. Hence, the trial court's determination in that regard will be sustained if probative evidence supports it.

The purchase agreement, as cited by the trial court, provided that if Palmer Dodge was unable to assign the contract within two days of its December 10, 1998 execution, Palmer Dodge had the option of declaring all contracts between Palmer Dodge and Long null and void. Financing was rejected on or about December 28th, some 18 days after Long executed the contract, and therefore Palmer Dodge did not exercise its option within the two-day time frame. In addition, the provision states that upon return of the Breeze, "Dealer shall refund all deposits made by the Purchaser." (App.7). The contract does not define "deposits." BLACK'S defines a "deposit" as "money or other property" given to another for a specific purpose. BLACK'S LAW DICTIONARY 450 (7th ed.1999). Thus, Long's "deposits" toward the purchase of the Breeze included not only her cash payment of $1,000.00[2] but also her trade-in vehicle.

Hoffman testified that he had been with Palmer Dodge for fourteen years and was president and general manager of the dealership in December of 1998. He confirmed that Palmer Dodge created and used the "I Understand" so that customers "understand what's going on." (Tr. 38).

---

2. As Palmer Dodge notes, we have held that that money cannot be the subject of a criminal conversion claim. *See Huff v. Biomet,* 654 N.E.2d 830, 836 (Ind.Ct.App.1995) and *Kopis v. Savage,* 498 N.E.2d 1266, 1269 (Ind.Ct.App. 1986).

That document specified that if Palmer Dodge was not able to obtain financing at the specified interest and payment levels within thirty days, Long was "entitled to receive a full refund of [her] down payment *and trade-in*" upon return of the Breeze. (Ex. 6) (emphasis added). Palmer Dodge did not spend thirty days seeking to obtain financing at the specified interest and payment levels. And the new financing it proposed to Long was not at the same interest and payment levels. Yet Palmer Dodge did not return to Long her trade-in and her down payment.

According to Hoffman, he believed that Palmer Dodge did not have to return Long's trade-in vehicle because Palmer Dodge had paid off her lien on the vehicle and that payment had exceeded the amount of Long's down payment. However, Palmer Dodge's own documents in this transaction provide the necessary preponderance of the evidence to support the trial court's implicit conclusion that such was not a reasonable basis for retaining Long's trade-in vehicle. When Palmer Dodge had the Breeze in its possession but refused to return her trade-in vehicle to Long, it knowingly exercised unauthorized control over that trade-in vehicle, *i.e.*, it exercised control "in a manner or to an extent other than that to which [Long] had consented." I.C. § 35–43–4–1(b)(2). Thus, sufficient evidence sustains a finding of criminal conversion.

 Although the trial court did not expressly state that it had found criminal conversion, as Palmer Dodge correctly asserts, "[T]he only theory which could be advanced based upon the evidence adduced at trial which would have made an award of attorney's fees proper was criminal conversion." Palmer Dodge's Br. at 4. Long's complaint sounded in criminal conversion, and the evidence supports a finding of criminal conversion. We "presume[ ] that

a trial court knows the law in Indiana." *Williams v. Trowbridge*, 422 N.E.2d 331, 333 (Ind.Ct.App.1981). Hence, we must conclude that the trial court awarded attorney's fees on this basis.

In an action under the crime victim's relief act, "the award of damages above the actual damages is within the discretion of the trial court." *Burgett v. Haynes*, 572 N.E.2d 1296, 1298 (Ind.Ct. App.1991). The trial court's award of $3,500 for the attorney's fees incurred by Long is not an abuse of that discretion.

We affirm.

SULLIVAN, J., and BAKER, J., concur.