**MCS LASERTEC, INC. and Kam Companies, Inc., Appellants–Plaintiffs,**

v.

**Richard J. KAMINSKI, Appellee–Defendant.**

No. 02A04–0409–CV–475.

Court of Appeals of Indiana.

May 26, 2005.

W. Randall Kammeyer, Hawk, Haynie, Kammeyer & Chickedantz, Fort Wayne, IN, Attorney for Appellants.

Richard J. Kaminski, Fort Wayne, IN, Appellee Pro Se.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kam Companies, Inc. ("Kam") and MCS LaserTec, Inc. (collectively "the plaintiffs") appeal from the trial court's partial grant of their Motion to Correct Error on their criminal conversion claim. The plaintiffs present two issues for our review, which we restate as:

1. Whether the trial court erred when it determined that Kaminski criminally converted only five of the disputed 198 payments.

2. Whether the plaintiffs are entitled to a new trial because Kaminski testified falsely at trial.

Kaminski cross-appeals, arguing that the plaintiffs' motion was deemed denied when the trial court did not rule on it within thirty days.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In 1994, Kaminski worked for both Kam and CompuSource, MCS LaserTec's predecessor, as an independent contractor, and, at both companies, Kaminski remanufactured toner cartridges, repaired printers, and assisted customers with dental and accounting software.[1] Kaminski invoiced Kam for goods and services that he provided to their customers and was compensated accordingly.

The next year, Kaminski formed his own company, Richard J. Kaminski, P.C., to sell toner cartridges and provide printer repair services.[2] Thereafter, he opened a checking account at Norwest Bank under that company's name. Kaminski purchased goods for his company using Kam accounts and Kam's corporate American Express card, and Kam, in turn, billed Kaminski for those purchases. Meanwhile, Kaminski continued to work for both Kam and CompuSource, and Kaminski's compensation was adjusted to reflect the expenses he incurred on Kam's accounts.

In June 1996, Kaminski began to send invoices to his clients under the name "MCS Laser Division," and each invoice began with the number three. A few months later, Kaminski also changed the name on his business bank account to "Richard Kaminski, d/b/a MCS Laser Division." At the time, Kam conducted business as Micro–Computer Specialties and used the acronym MCS.

On January 22, 1998, CompuSource acquired the assets of LaserTec and was later re-named MCS LaserTec. Kaminski, his brother Robert Kaminski, and his father Ronald Kaminski, each owned one-third of the MCS LaserTec shares, and it was their intent that Kaminski run MCS LaserTec once he had demonstrated that he possessed the necessary expertise.

In July 1998, Robert learned that Kaminski was operating under the name MCS Laser Division, and he terminated Kaminski's employment relationships with both Kam and MCS LaserTec at the end of that month. Subsequently, Robert discovered that Kaminski had deposited $63,259.55 in checks and payments from

---

1. Kaminski's older brother Robert is the President of Kam and MCS LaserTec, and the two companies' work often overlapped significantly.

2. Despite the "P.C." designation, Kaminski's company was not a professional corporation.

customers of MCS LaserTec and Kam into Kaminski's Norwest bank account. On March 18, 1999, MCS LaserTec and Kam filed a complaint against Kaminski, alleging in part that he had converted their property and seeking treble damages and attorneys' fees pursuant to Indiana Code Section 34–24–3–1. On July 10, 2003, following a bench trial, the trial court entered judgment in favor of MCS LaserTec and Kam in the amount of $94,829.55 but declined to award the plaintiffs treble damages or attorneys' fees.[3] The trial court found and concluded in relevant part as follows:

## FINDINGS OF FACT

\* \* \*

34. While [Kaminski] was a shareholder and worked with MCS [LaserTec], he was not authorized to receive payments from customers and deposit them directly into his own personal bank accounts.

35. All customer receipts from MCS [LaserTec] were to be deposited into the company account of MCS [LaserTec].

36. [Kaminski] deposited receipts from customers of MCS [LaserTec] directly into his personal bank account at Norwest Bank of Indiana, Account Number 008–5782534.

37. Plaintiffs' Exhibit 31 is a summary spreadsheet that lists out each deposit by [Kaminski] of MCS [LaserTec's] customer receipts into [Kaminski's] own personal account as demonstrated in the bank records of Plaintiffs' Exhibit 30.

38. Every deposit on Exhibit 31 was not, according to Robert Kaminski, authorized by MCS [LaserTec] or Kam.

39. The total of allegedly unauthorized deposits of customers of MCS [LaserTec] by [Kaminski] was $63,259.55.

\* \* \*

41. All of the customers listed in Exhibit 31 in which deposits were made by [Kaminski] into his personal bank account were on invoices generated by [Kaminski] that MCS and Robert were unaware of. Furthermore, Robert, Kam, and MCS were unaware of these deposits and [Kaminski] was not authorized to make them, nor authorized to issue any of the invoices listed.

\* \* \*

44. The Plaintiffs produced no records which show they ever maintained a bank account under the name of MCS Laser Division.

\* \* \*

56. [From 1994 to 1998], [Kaminski] did not have a self-standing company on his own, but instead, worked for Robert.

57. [Kaminski] was not allowed to receive all income generated from the sale[s] of parts through MCS [LaserTec].

---

**3.** It appears that the $94,829.55 judgment reflects the trial court's findings that Kaminski wrongfully deposited $63,259.55 of the plaintiffs' funds into his personal bank account and that he was obligated to repay the $31,570.00 in personal expenses that he had received from Kam and MCS LaserTec. But because the court found that the plaintiffs did not prove criminal conversion by a preponderance of the evidence, the court did not award them treble damages.

\* \* \*

61. *From January 1, 1998 through December 31, 1999, [Kaminski] deposited payments into his personal bank account at Norwest Bank, Account Number 008–5782543, checks and payments received from customers of MCS [LaserTec] or Kam, totaling $63, 259.55.*

62. In addition, in 1998 [Kaminski] received payment of personal expenses by MCS [LaserTec] or Kam, that are [Kaminski's] obligation to repay, totaling $31,570.00

\* \* \*

66. *[Kaminski] testified that he paid for all of the products and performed all of the services for which he deposited the $63,259.55 in his own personal bank account.*

CONCLUSIONS OF LAW

\* \* \*

14. *The evidence as to whether [Kaminski's] deposits to his own bank account of $63,259.55 constituted criminal conversion is conflicting, and the Court finds that notwithstanding its Finding of Fact 61, the Plaintiffs have not proven by a preponderance of the evidence that [Kaminski's] acts of depositing said funds constituted criminal conversion under Ind[iana] Code [Section] 35–43–4–3.*

15. *The Court therefore finds that the Plaintiffs are not entitled to treble damages, under Ind[iana] Code [Section] 34–24–3–1, as a result of [Kaminski's] conduct, nor are they entitled to attorney fees arising therefrom.*

Appellant's App. at 19–25 (emphases added).

Subsequently, MCS filed a Motion to Correct Error, and the trial court scheduled a hearing for October 23, 2003. After MCS filed that motion, but before the hearing was held, Kaminski pleaded guilty to criminal conversion of five of the disputed checks. In particular, Kaminski pleaded guilty to the allegation that between June 1, 1998 and July 29, 1998, he knowingly or intentionally exerted unauthorized control over Kam's property, namely $2,104.63 owed to Kam for sales and services that it had provided, when he deposited those checks in his Norwest bank account. Each of those five checks had designated MCS Laser Division as payee, and each had been at issue in the previous civil trial. The makers and amounts of those checks were as follows:

| | |
|---|---|
| Community State Bank | $829.68 |
| Hydra-Tech, Inc. | $329.70 |
| Olive B. Cole Foundation | $354.00 |
| SCAN, Inc. | $275.00 |
| John Whitmore | $316.25 |

Thereafter, on September 9, 2003, MCS moved to supplement its previous motion to correct error based upon newly discovered material evidence. On October 23, 2003, following a hearing on the plaintiffs' motion to correct error, the trial court took the matter under advisement.

On November 24, 2003, before the trial court issued its ruling on the plaintiffs' motion, Kaminski filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code, and, pursuant to Section 362 of that Code, an automatic stay was entered at the moment Kaminski filed his petition. Subsequently, the bankruptcy court lifted the stay with respect to the instant proceeding so that the plaintiffs' claims could be fully resolved. On June 21, 2004, the trial court entered an Order

granting in part the plaintiffs' motion to correct error and amending conclusions 14 and 15 of its July 10, 2003 Order. Specifically, the trial court concluded that the "[p]laintiffs had shown, by a preponderance of the evidence, that [Kaminski's] acts of depositing $2,104.63 of said $63,259.55 constituted criminal conversion under I.C. § 35–43–4–3" and that the plaintiffs were entitled to treble damages in the sum of $6,313.89 and attorneys' fees arising from the criminal conversion. Appellant's App. at 96. Accordingly, the previous judgment was changed from $94,829.55 to $99,038.81.[4] This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Inadequate Relief

■ The plaintiffs assert that in light of Kaminski's guilty plea, the trial court erred when it concluded that Kaminski had criminally converted only five of the disputed payments. In particular, they maintain that there is no evidence that distinguishes the five checks from other payments Kaminski deposited without authorization and that the trial court's findings are inconsistent with its conclusions thereon. We cannot agree.

■ Pursuant to Indiana Trial Rule 52(A), the trial court entered findings of fact and conclusions thereon. That rule provides in pertinent part that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has entered specific findings and conclusions along with its judgment under Trial Rule 52, we apply a two-tiered standard of review. *Reum v.*

*Mercer,* 817 N.E.2d 1267, 1271 (Ind.Ct. App.2004). First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but only consider the evidence favorable to the trial court's judgment. *Id.*

■ We define the clearly erroneous standard based on whether the party is appealing a negative or an adverse judgment. *Garling v. Ind. Dep't of Natural Res.,* 766 N.E.2d 409, 410 (Ind.Ct.App. 2002), *trans. denied.* Where, as here, the party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Clark v. Crowe,* 778 N.E.2d 835, 839 (Ind. Ct.App.2002). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

Under the Indiana crime victim's relief act, a person who has suffered a pecuniary loss as a result of a violation of criminal conversion may bring a civil action to recover the loss. *See* Ind.Code § 34–24–3–1; *Palmer Dodge, Inc. v. Long,* 791 N.E.2d 788, 791 (Ind.Ct.App.2003); *Greco v. KMA Auto Exchange, Inc.,* 765 N.E.2d 140, 148

---

4. Because the previous judgment had already accounted for the $2,104.63, the award was only increased by twice that amount, or $4,209.26.

(Ind.Ct.App.2002) (quotations omitted). A person commits criminal conversion when he "knowingly or intentionally exerts unauthorized control over property of another person." Ind.Code § 35–43–4–3; *see Greco,* 765 N.E.2d at 148. To " 'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Ind.Code § 35–43–4–1(a); *see Whitaker v. Brunner,* 814 N.E.2d 288, 297 (Ind.Ct.App.2004), *trans. denied.* A person's control over property of another person is "unauthorized" if it is exerted without the other person's consent. Ind.Code § 35–43–4–1(b); *see Whitaker,* 814 N.E.2d at 297. Finally, "[a] person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so," while "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2; *see Whitaker,* 814 N.E.2d at 297. The mens rea requirement differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to cover. *Whitaker,* 814 N.E.2d at 297.

■ Pursuant to Indiana Code Section 34–24–3–1, a person who proves the elements of criminal conversion by a preponderance of the evidence can recover up to three times the actual damages, the costs of the action, and reasonable attorneys' fees. *Id.* But the award of damages above the actual damages is within the discretion of the trial court. *Long,* 791 N.E.2d at 792.

Here, the plaintiffs had the burden of proof, and, following a bench trial, the court concluded that the plaintiffs had not carried that burden. Subsequently, Kaminski pleaded guilty to criminal conversion of five checks that had been at issue in the civil trial, and the court later modified its judgment to reflect Kaminski's admission. To the extent that they are dissatisfied with the trial court's award, the plaintiffs are appealing from a negative judgment, and, as such, they must demonstrate that the trial court's judgment is contrary to law. The plaintiffs contend that Kaminski must have criminally converted all the disputed payments because he pleaded guilty to criminally converting five of them. But they do not point to any evidence other than the plea agreement to support that contention. Kaminski's guilty plea proves only that he criminally converted five checks. It does not prove that he committed criminal conversion with respect to the remaining 193 disputed payments. The plaintiffs have failed to bridge that evidentiary gap, and, thus, we cannot say that the trial court's judgment is contrary to law. *See Clark,* 778 N.E.2d at 839 ("A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion.").[5]

### Issue Two: New Trial

■ In the alternative, the plaintiffs argue that they are entitled to a new trial because Kaminski's guilty plea is inconsistent with his testimony at the civil trial and unduly prejudiced them. But in their motion to correct error, they requested that the trial court amend its Order to show that Kaminski criminally converted their funds and award them treble damages and attorneys' fees. They did not

---

5. We further note that even if the plaintiffs had prevailed on the criminal conversion claim, they would not be *entitled* to treble damages. *See Long,* 791 N.E.2d at 792 (award of damages above the actual damages is within trial court's discretion).

request a new trial. It is well settled that "[o]n appeal, a party may not request relief for which [it] made no claim to the trial court." *Rosby Corp. v. Townsend, Yosha, Cline & Price*, 800 N.E.2d 661, 666 (Ind. Ct.App.2003) (quoting *Tomahawk Vill. Apartments v. Farren*, 571 N.E.2d 1286, 1294 (Ind.Ct.App.1991)), *trans. denied*. Thus, the issue is waived.

### Cross–Appeal

We must also address whether our review on appeal pertains to the trial court's June 21, 2004 amended Order or the original July 10, 2003 Order. Kaminski contends that we must limit our review to the trial court's July 10 Order because the plaintiffs' motion to correct error was deemed denied when the trial court did not rule on that motion within thirty days. We disagree.

If the trial court does not rule on a motion to correct error within thirty days after it is heard, the motion is deemed denied by operation of law. Ind. Trial Rule 53.3; *see Rose v. Denman*, 676 N.E.2d 777, 780 (Ind.Ct.App.1997). The trial court's power to rule on the motion thereafter is extinguished and a subsequent ruling is a nullity. *Rose*, 676 N.E.2d at 781. But under the bankruptcy code:

> [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the [bankruptcy] petition, then such period does not expire until the later of[:]
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.

11 U.S.C. § 108(c). Here, the deadline for ruling on the plaintiffs' motion to correct error was November 24, 2003, the same day that Kaminski filed for bankruptcy and the automatic stay was entered. *See* Ind. Trial Rule 6(A). Within three days of the bankruptcy court lifting the stay, the trial court granted in part the plaintiffs' motion to correct error. Thus, the trial court's action occurred within the Section 108 thirty-day extension, and the court's ruling on the plaintiffs' motion to correct error was timely. *See* 11 U.S.C. § 108(c). We therefore conclude that the June 21 Order controls this appeal.

### CONCLUSION

The trial court's judgment was not clearly erroneous because Kaminski's guilty plea, alone, does not prove that he criminally converted all the disputed payments. Further, the plaintiffs waived their request for a new trial, and the trial court's ruling on the plaintiffs' motion to correct error was timely.

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.