John W. ANTHONY, Appellant–
Plaintiff,

v.

INDIANA FARMERS MUTUAL
INSURANCE GROUP,
Appellee–Defendant.

No. 49A02–0503–CV–209.

Court of Appeals of Indiana.

April 18, 2006.

John W. Anthony, Indianapolis, pro se.

Donna H. Fisher, Smith Fisher Maas & Howard, P.C., Indianapolis, for Appellee.

## OPINION

FRIEDLANDER, Judge.

This case stems essentially from a dispute between John W. Anthony and his attorneys regarding a settlement between Anthony and Indiana Farmers Mutual Insurance (IFMI). Anthony, pro se, presents as the sole issue upon appeal the propriety of the trial court's ruling that Anthony authorized his attorneys to settle his uninsured motorist claim against (IFMI).

We affirm.

This is the second appeal in this case that has come before us. In our previous opinion, we set out the underlying facts. We reproduce here that relatively lengthy recitation of facts because it will aid in understanding the instant discussion and decision:

This case arises from an automobile accident involving vehicles driven by Anthony and an uninsured motorist. At all times pertinent to the accident, Anthony had uninsured motorist coverage through Indiana Farmers. On November 12, 1996, Anthony filed a complaint, in part, against Indiana Farmers, alleging uninsured motorist coverage. On February 26, 1999, the case proceeded to mediation; however, the parties did not reach a settlement. After the unsuccessful mediation but prior to trial, Anthony's original attorney withdrew and Anthony retained Charles D. Hankey ("Hankey") as his legal representative.

The trial court set the matter to be tried on October 29, 2002. However, prior to trial, Hankey agreed to dismiss Anthony's cause of action for $7,500.00, plus forgiveness of a $3,100.00 medical lien payment and a $600.00 debt owed to Indiana Farmers by Anthony. Apparently, Hankey communicated the settlement agreement to the trial court because the trial did not commence on the October 29th trial date. Subsequently, however, Anthony refused to sign the settlement agreement and the release forms.

On December 11, 2002, Hankey moved to withdraw as Anthony's counsel. Indiana Farmers filed an objection to Hankey's motion to withdraw and a motion to enforce settlement agreement. The trial court granted Hankey's motion to withdraw as Anthony's counsel.

On July 14, 2003, at a hearing on Indiana Farmers's motion to enforce settlement agreement, the trial court

heard oral argument, in part, from Anthony, who was proceeding pro se, and Sondra Burger ("Burger"), an attorney working in the same law firm as Hankey. However, the trial court did not place Burger or Anthony under oath and, thus, such argument was not admissible as evidence because it was not given under penalties for perjury. At this hearing, the following colloquy occurred between the trial court, Burger, and Anthony:

[Burger:] ... And I can go on and talk about the settlement procedure if you want to talk about that.

[Court:] Well, while we're on the record here you might as well talk about it.

[Burger:] Okay. Now, we had a period of time right before the trial where we had hired another attorney to help us with trial preparation. Okay? That's Ron Weldy [ ("Weldy") ].... [Weldy] did a wonderful job of actually putting things together and getting us the actual information that we needed to go forward with the trial. One of the things that [Weldy] did was take the second deposition of Dr. Guise. When he was finished with talking with Dr. Guise, we determined that what Dr. Guise could support in off-work statements and time off work for [Anthony] was a rather less amount of time than what he initially indicated that he was off because of this accident. When we figured out his medical bills, which were in the vicinity of $2,700, and what we could support with Dr. Guise's deposition, when we got the offer from [Indiana Farmers], which was $7,500 of new money, plus the waiver of medical expenses... $3,100 worth of medical expenses that the insurance company...that (Indiana) Farmers had already paid, plus the waiver of an amount of money from a

previous claim that they had a lien directed toward [Anthony,] we told him that this was as good as he was going to get. Okay? We were very convinced that the additional money— which grew while Mr. Hankey was on the case from about $2,500 in new money to $7,500 in new money—we were convinced that it was in his best interest to settle the case. We had a very long discussion with [Anthony,] which he has referred to, and we explained this to him several times. For a period of probably two hours we discussed this with him... maybe even a little bit longer... right before trial. And the net result of this was that myself, [Weldy,] and [Hankey] are convinced that [Anthony] indicated that he wished to settle the case with the $7,500 new money amount. He said "Okay, go ahead and settle." So we did.

[Anthony:] (Unclear comment)

[Court:] Sir, just hang on.

[Anthony:] Okay. Okay.

[Burger:] And that's how this happened. He said "Okay, go ahead and settle." Basically, we said "Thank you very much. We appreciate this. We will take care of it." The next morning, I called [the attorney for Indiana Farmers] and told her, and we were settled. And it was something that all three of us were in agreement that it was in the best interest of Mr. Anthony to settle this case. And that's how that happened. The three of us discussed this with him, in his presence. We got his okay to settle. The next morning, I called [Indiana Farmers] and we settled.

Anthony responded:

[Anthony:] Yes, I agree with it up to a point. But I did not agree to settle on

that day. I said that if they wouldn't go any more than that, it was my choice to have a jury trial. I did not want it decided in an attorney's office. I wanted it decided in a court room if they did not come up with the negotiated settlement that I had indicated, which was $10,000 after all attorney fees and after all attorney expenses.

Following this hearing, the trial court entered findings of facts and conclusions thereon, in pertinent part, as follows:

\* \* \* \* \* \*

3. That the parties stipulated that an offer was made by [Hankey,] as attorney for [Anthony,] to [Indiana Farmers,] ... to settle all claims and dismiss the lawsuit herein for an amount of $7,500.00.

\* \* \* \* \* \*

7. That the relationship between [Anthony] and [Hankey] broke down in regards [sic] the signing of the Stipulation of Dismissal.

\* \* \* \* \* \*

WHEREFORE, THE COURT FINDS AND ORDERS:

1. That the attorney, [Hankey,] had the authority to settle the lawsuit, and that the settlement acceptance by [Indiana Farmers] was a good faith acceptance of the offer.

\* \* \* \* \* \*

3. That the offer and acceptance was made, but the principal, [Anthony,] did not sign any agreement, and therefore there was not a contract between Anthony and Indiana Farmers.

*Indiana Farmers Mut. v. Anthony*, 807 N.E.2d 805, No. 49A04–0306–CV–283, slip op. at 2–6 (Ind.Ct.App. April 6, 2004) (internal citations and footnote omitted).

On March 21, 2003, IFMI filed a motion to correct error, challenging the denial of its motion to enforce the settlement agree-

ment. The trial court denied that motion. At IFMI's request, the trial court certified that ruling for interlocutory appeal. On April 6, 2004, we remanded the case to the trial court with instructions to conduct an evidentiary hearing on the issue whether Anthony's attorney had either implied, express, or apparent authority to bind Anthony by entering into the settlement agreement with IFMI.

On December 6, 2004, the trial court conducted an evidentiary hearing at which Anthony and IFMI's attorney questioned Hankey, Burger, and Weldy regarding whether Anthony authorized them to enter into a settlement agreement. The testimony of Hankey and Burger at this hearing was substantially similar to their statements on the same subject at the July 13, 2003 hearing, as set out above. On January 6, 2005, the trial court entered an Order to Enforce Settlement Agreement, including the following pertinent findings of fact and conclusions of law:

The Court finds that Mr. Anthony gave his attorneys actual authority to accept Indiana Farmers' offer and further finds that Indiana Farmers is entitled to rely upon the representations of Mr. Anthony's attorneys that settlement was accepted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [IFMI], having paid the settlement amount into the Court, shall be dismissed as a defendant from this lawsuit, with prejudice, and that [IFMI's] lien in this matter of $3,100.00 and prior judgments of $600.00 against Mr. Anthony be extinguished according to the settlement terms.

THE COURT FURTHER FINDS AND ORDERS that the attorney's lien of [Hankey] is NOT extinguished.

*Appellant's Appendix* at 14–15. Anthony appeals that decision.

The challenged order was issued following a hearing without benefit of a jury, and was accompanied by findings and conclusions. Pursuant to Indiana Trial Rule 52(A), "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has entered specific findings and conclusions along with its judgment, we apply a two-tiered standard of review. *MCS LaserTec, Inc. v. Kaminski,* 829 N.E.2d 29 (Ind.Ct. App.2005). Construing the findings liberally in support of the judgment, we first consider whether the evidence supports those findings. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* We must next determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. We will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, and consider only the evidence favorable to the trial court's judgment. *Id.*

We define the particular clearly erroneous standard to be used based on whether the party is appealing a negative or an adverse judgment. *Romine v. Gagle,* 782 N.E.2d 369 (Ind.Ct.App.2003), *trans. denied.* In this case, Anthony appeals from an adverse judgment because he was the party defending against IFMI's motion and thus did not bear the burden of proof.

When the trial court enters findings in favor of the party bearing the burden of proof, the findings are clearly erroneous if they are not supported by substantial evidence of probative value. Moreover, we will reverse such a judgment even where we find substantial supporting evidence, if we are left with a definite and firm conviction a mistake has been made.

*Id.* at 376 (internal citations omitted).

We pause at the outset of our analysis to make several observations about Anthony's appellate brief. An appellant who proceeds pro se is "held to the same established rules of procedure that a trained legal counsel is bound to follow and, therefore, must be prepared to accept the consequences of his or her action." *Thacker v. Wentzel,* 797 N.E.2d 342, 345 (Ind.Ct.App.2003) (quoting *Ramsey v. Review Bd. of Indiana Dep't of Workforce Dev.,* 789 N.E.2d 486, 487 (Ind.Ct.App. 2003) (quotation marks omitted)). Thus, a pro se litigant is expected to adhere to the prescribed form of the appellate brief set out in Rule 46. Among other things, that means the statement of facts is to be a narrative statement of facts and is not to be argumentative. *Parks v. Madison County,* 783 N.E.2d 711 (Ind.Ct.App.2002), *trans. denied.* Also, the appellate brief must contain a "statement of the case" section. The rule describes the contents of that section as follows: "This statement shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court or Administrative Agency." App. R. 46(A)(5). In other words, the "statement of the case" section sets forth the procedural history of the case. *See Moore v. Liggins,* 685 N.E.2d 57 (Ind.Ct. App.1997).

Although Anthony has included these sections in his appellate brief, they, like a large portion of the "argument" section of

his brief, suffer from the same infirmity: they substitute virulent, accusatory rhetoric for substantive content and argument. His appellate brief is rife with examples of this sort of language, of which the following excerpt is representative:

My former attorneys and Indiana Farmer's attorney are conspiring to intentionally interfere with the orderly administration of law and justice by cooperating to fabricate evidence that I had agreed to Indiana Farmer's final out-of-court offer for settlement two weeks prior to my canceled jury trial. Their cooperation to intentionally fabricate evidence that I had agreed to a settlement that I had instead rejected is having the effect of denying me a timely jury trial and obstructing justice for my claim against Indiana Farmers.

Several events and circumstances give the appearance my attorneys became involved with self-dealing when they cooperated with the attorney for Indiana Farmers to minimize the amount for [sic] my settlement and prevent me from having my jury trial. My attorneys and Indiana Farmer's [sic] attorney cooperated to decide the amount and terms for my settlements without my knowledge and consent. My attorneys cooperated with Indiana Farmer's [sic] attorney to make certain my settlement would be decided outside the courtroom and under circumstances where I would not have an opportunity to object to the amount and the terms for the settlement, and for an amount that was considerably below a fair settlement value.

My former attorneys and the attorney for Indiana Farmers conspired to manipulate the trial court and the appeals court on interlocutory appeal into deciding whether to enforce their unauthorized settlement rather than having my jury trial so my settlement could be based on the merits of my personal injury and income loss claims. My attorneys and the attorney for Indiana Farmers have cooperated to obstruct justice for my case and to manipulate the trial court into denying me due process and my fundamental civil rights for a timely jury trial.

*Appellant's Brief* at 26–27. The foregoing excerpt is taken from the "facts" section of Anthony's brief. Yet, although it consists of three full paragraphs, it does not set forth a single fact. It amounts to little more than a steady stream of accusations, or, more accurately, the drumbeat repetition of essentially the same charge, viz., that his and IFMI's attorneys lied. Anthony goes so far on several occasions as to imply, if not outright assert, that his former attorneys employed "legal maneuvers", *id.* at 44, whose primary purpose was to "manipulate", *id.* at 43 the trial court, which in turn "continuously ignored and overlooked", *id.* at 42–43, Anthony's evidence, thereby "prevent[ing Anthony] from obtaining [his] basic rights." *Id.* at 43. Similar material can be found throughout the "statement of the case" and "argument" sections of his brief.

As indicated above, such assertions and rhetoric are irrelevant to this appeal, and certainly do nothing to help Anthony's cause. Anthony's frustration with the progress of his case is palpable. Obviously, he believes that his plight thus far is attributable to dishonest attorneys and an indifferent, if not easily manipulated and complicit, court system. In point of fact, his no-doubt heartfelt claims of denial of due process and lack of a fair trial stem, at least in part, from his understandable ignorance of the rules of civil procedure. What he sees as collusion on the parts of his former attorneys and the trial court to prevent him from presenting his case is in fact those parties' adherence to the rules of evidence and trial procedure. To use

the common vernacular, Anthony must play by the rules.

Unfortunately for Anthony, ignorance of those rules exacts a cost, and that cost is never more apparent than here. For instance, Anthony is not knowledgeable about how evidence must be presented. Virtually all of the unfairness of which he complains is nothing more than the trial court correctly enforcing the rules of evidence and civil procedure. This underscores the peril of his decision to proceed pro se; he does not *know* the rules. In light of this, it is not surprising that, among other things, he attempts to inject the principle of res ipsa loquitur in a setting not appropriate for that doctrine, without attempting to support his claim with legal argument. We will not attempt in this opinion to address all such shortcomings and misconceptions, as this is not the appropriate forum to offer a primer in the Indiana Rules of Civil Procedure and the Indiana Rules of Evidence. Rather, we offer these observations to assure Anthony that we have considered all of the claims he submitted in support of his appeal, and to explain why they will not be addressed on a point-by-point basis.

■ Which brings us to the sole legally cognizable issue in his appeal. It seems to us that all of Anthony's claims can be condensed into a single legal issue: did Anthony's attorneys have actual or apparent authority to settle the claim against IFMI? We will focus on that issue, and except for the foregoing brief observations, choose to disregard the inflammatory, irrelevant rhetoric that permeates much of Anthony's brief.

■ As indicated, Anthony's claim upon appeal amounts to a single assertion: he did not give his attorneys permission to settle his case against IFMI. The trial court determined that he did, and upon that basis granted IFMI's motion to enforce the settlement agreement. From the perspective of IFMI, such permission could have been established in either of two ways—actual authority or apparent authority. Our Supreme Court has stated that actual authority "is created 'by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." ' *Gallant Ins. Co. v. Isaac,* 751 N.E.2d 672, 675 (Ind.2001) (quoting *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000)). Apparent authority, on the other hand, "refers to a third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent." *Gallant Ins. Co. v. Isaac,* 751 N.E.2d at 675.

The transcript of the December 6, 2005 evidentiary hearing leaves no room for doubt about his attorneys' claims regarding whether he authorized them to settle for $7500. Attorney Hankey testified as follows in response to a question posed by Anthony:

John, I have no question or qualms or doubts or hesitation in saying that you told us to settle the case. Because you did. Now, you changed your mind later, but you told us to settle that case, and there was very good reason for you to do that, based on what we had found out that the doctor was going to say, and the wage loss that you contended, and the other factors that were going to come out. And when those were explained to you, it was a rational decision for you to tell us to settle the case. It made sense. And when you finally understood those things, you instructed us to settle the case, which we did.

*Transcript* at 13. The following exchange between Attorney Burger and Anthony corroborated Hankey's testimony:

Q [Anthony] Okay. I might be a day or two off either way on dates, but it was about a week before, as I recall. Anyway, during that meeting, do you recall that the settlement was offered to me and I refused the settlement, and I requested a Jury trial because the settlement was not sufficient?

A [Burger] No, sir. I do not recall that.

Q Okay. So you're also saying that I agreed to settle at that time, for the $7,500?

A Mr. Anthony, I believe I testified to this question before, and I believe I said that you said ... and this is a quote, as much as I can remember it ... "Okay, go ahead and settle." And that is what you told me, and that is what I did.

Q Okay. Do you recall we started talking about the settlement amount and I said "$7,500 in my pocket after all legal expenses and all legal fees"?

A You may have said that some time during the meeting that we had, but then ... you may have said that, but really I don't remember that. But in the end, you said that we could settle for $7,500 plus the other parts of the settlement, which were the waivers of the judgment and the medical bills.

*Id.* at 18. Burger was even more adamant on this matter while testifying upon cross-examination: "There's absolutely no doubt in my mind that Mr. Anthony agreed to settle under the $7,500 term plus the addition of those other waivers and other releases. No doubt in my mind whatsoever." *Id.* at 20. Finally, Attorney Weldy, the third attorney present in the meeting at which Anthony authorized settlement of his lawsuit for $7500, testified as follows:

[Anthony] During that meeting, didn't I refuse the settlement offer and indicate that I wanted to go to a Jury trial?

[Weldy] No.

*Id.* at 23. In contravention of the three attorneys' testimonies on this pivotal issue stands only Anthony's denial that he gave such authorization.

If the trial court believed the attorneys' claims that Anthony did indeed explicitly authorize settlement for the terms of the offer then pending, then it could decide the legal question in IFMI's favor based upon a finding of actual authority. Under those circumstances, there would have been no need to make a determination of whether the attorneys had apparent authority to accept IFMI's settlement offer. It is obvious that the trial court was persuaded that the attorneys' testimonies were more credible than Anthony's on the question of whether he authorized the settlement. In fact, our review of the transcript of the December 6, 2004 hearing reveals that, other than his own denial that it was so, Anthony presented no evidence to rebut the attorneys' claims that he authorized them to accept the $7500 settlement offer.

The trial court's findings and conclusions are supported by substantial evidence of probative value and thus are not clearly erroneous. *See Romine v. Gagle,* 782 N.E.2d 369. Accordingly, Anthony is not entitled to reversal.

As a final matter, Anthony asks that "Hankey's attorney lien for the unauthorized settlement be extinguished[.]" *Appellant's Brief* at 46. The argument is unsupported by legal argument, and therefore is waived. *Topp v. Leffers,* 838 N.E.2d 1027 (Ind.Ct.App.2005), *trans. denied.*

Judgment affirmed.

VAIDIK, J., concurs.

SULLIVAN, J., concurs in result.