Scott RUSE, Appellant–Defendant,

v.

Mark BLEEKE, Appellee–Plaintiff.

and

Scott Ruse, Appellant/Cross
Appellee–Plaintiff,

v.

Terry Parrish, Appellee/Cross–
Appellant–Defendant.

No. 02A04–0902–CV–115.

Court of Appeals of Indiana.

Sept. 29, 2009.

Robert Owen Vegeler, Vegeler Law Office LLC, Fort Wayne, IN, Attorney for Appellant/Cross–Appellee Ruse.

Holly A. Brady, Melanie L. Farr, Haller & Colvin P.C., Fort Wayne, IN, for Appellee Mark Bleeke.

Michael H. Michmerhuizen, Barrett & McNagny LLP, Fort Wayne, IN, for Appellee Terry Parrish.

## OPINION

KIRSCH, Judge.

In this consolidated appeal, Scott Ruse ("Ruse") appeals after a bench trial from the trial court's judgment in favor of Mark Bleeke ("Bleeke") in his action against Ruse alleging claims under the Indiana Crime Victim's Relief Act, fraud, and breach of fiduciary duty. Ruse also ap-

peals after a bench trial from the trial court's judgment in favor of Terry Parrish ("Parrish") in an action brought by Ruse against Parrish alleging breach of contract and criminal conversion. The broad issue presented for our review from these judgments is whether there is sufficient evidence to support the findings of fact and conclusions thereon issued in both judgments against Ruse. Parrish cross-appeals arguing that if we find the trial court erred during the bench trial, he should have been entitled to summary judgment.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

 Early in 2005, Ruse contacted RLED, LLC ("RLED") about purchasing Roaring Lion® for his bar, Pepperchinis, located in Huntertown, Indiana. Roaring Lion® is an energy drink similar to Red Bull, which many bars use as a drink mixer. RLED referred Ruse to Mike Smith ("Smith"), a Georgia resident, who distributed Roaring Lion® in Indiana.

Ruse had conversations with Bleeke about Roaring Lion® and told him that he was considering becoming a distributor of the product in Indiana, selling and distributing Roaring Lion® and brand extensions to local bars, restaurants, and other retail outlets. Ruse asked Bleeke if he would be interested in becoming a salesman for Ruse. In late March 2005, Ruse informed Bleeke that he had purchased the exclusive distribution rights for Roaring Lion® in Indiana with the exception of six counties in northwest Indiana.

Ruse paid Smith $3,150 by a cashier's check on April 6, 2005, as a partial payment of the $7,150 total, to receive the exclusive distribution rights to Roaring Lion ® and a few accounts Smith had developed here in Indiana. Those accounts generated approximately $500 of profit per month. Ruse contacted Bleeke and asked Bleeke if he was interested in becoming involved in Ruse's venture. Bleeke and Ruse met at Ruse's bar in April 2005 to discuss Bleeke's potential involvement in the sale of Roaring Lion® in Indiana. Bleeke indicated that he did not want to be just a salesperson, but wanted to obtain an ownership interest in the business and asked Ruse what percentage of the business he would be willing to sell. Ruse told him that he had invested $50,000 in the business and that he would sell Bleeke a fifty percent interest in the business for $25,000. Based upon Ruse's representations, Bleeke believed that Ruse had invested $50,000 in obtaining the exclusive rights to distribute Roaring Lion® in Indiana. Ruse and Bleeke agreed to do business as S & M Distributing.

Ruse's total investment for the exclusive rights, accounts, and product was $7,150 and not the $50,000 he represented to Bleeke. The business had no inventory,

1. We note that Ruse's brief contains a Statement of Facts section which simply states that the Statement of Facts section had been placed in the Appellant's Appendix at Tab H. Indiana Appellate Rule 46(A)(6) provides that an appellant's brief shall contain a Statement of the Facts section which shall describe the facts relevant to the issues presented for review. Furthermore, a Statement of Facts should be a concise narrative of the facts stated in the light most favorable to the judgment and should not be argumentative. *See* *Kanach v. Rogers*, 742 N.E.2d 987, 988 n. 1 (Ind.Ct.App.2001). Both Bleeke and Parrish argue that the materials located at Tab H are a copy of Ruse's proposed findings of fact which were rejected by the trial court. Lastly, several documents may be included in an Appellant's Appendix, but a section of the contents of the Appellant's Brief is not among those listed. Ind. Appellate Rule 50(A)(2). We remind counsel of the duty to follow the Rules of Appellate Procedure.

equipment or tools when Bleeke joined Ruse. Bleeke did not believe that the business had any value beyond any actual investment paid to acquire the distribution rights and believed that his payment of $25,000 would reimburse Ruse for one-half of the cost of acquiring those rights.

Ruse and Bleeke agreed to contribute an additional $6,000 each for working capital and to purchase inventory and equipment. In late April 2005, Bleeke paid Ruse $10,000 in cash and gave him a check for $21,000 for his investment. After receiving the funds from Bleeke, Ruse obtained two cashier's checks. One, in the amount of $4,000, was payable to Smith and represented the balance of Ruse's payment for the distribution rights. The second check, in the amount of $5,950, was payable to RLED for the purchase of a pallet of Roaring Lion®. Neither Ruse's personal account, nor the Pepperchinis account show that any money was withdrawn from those accounts to pay for the cashier's checks.

Ruse agreed to establish a checking account for S & M Distributing and was supposed to have contributed his $6,000 working capital investment to open the account. Instead, Ruse opened the account with a deposit of $200. Ruse paid several non-S & M Distributing obligations with funds from the S & M Distributing account. Among those payments not authorized by Bleeke were payments to the Fort Wayne Youth Soccer League, Rooter Services, and Meyers Amusement. Ruse also made several cash withdrawals, which were neither authorized by, nor shared with, Bleeke. Further, Ruse wrote checks totaling $9,000 to Pepperchinis. S & M Distributing did not owe any money to Pepperchinis, and these transfers were also not authorized by Bleeke. Ruse also transferred $2,000 from the S & M Distributing account to Pepperchinis. Bleeke did not authorize that transfer.

During Bleeke and Ruse's partnership, RLED prepared an exclusive distribution agreement for Ruse to sign and return. The terms of the agreement included: 1) minimum product quantity purchases by the distributor in exchange for exclusivity along with RLED's right to terminate exclusivity and the distributor's right to cure; 2) acknowledgement that the distributor had not paid RLED to be a distributor; and, 3) that the distributor's rights were not assignable without prior written consent of RLED. On July 11, 2005, Edward Hackney ("Hackney") of RLED sent an e-mail to Ruse asking him if he had signed and returned the agreement. On July 12, 2005, Ruse represented to Hackney in an e-mail that he had signed and returned the agreement; however, Ruse never signed or returned the agreement.

As of October 25, 2005, Ruse had only paid $200 of the agreed upon $6,000 in working capital contribution. On October 25, 2005, Ruse deposited $2,000 from the Pepperchinis account to the S & M Distributing account. On January 7, 2006, Ruse deposited $12,500 from the Pepperchinis account to the S & M Distributing account. At the time of that deposit, S & M Distributing owed RLED $13,397.94 for product that it had purchased.

On March 15, 2006, Bleeke and Ruse agreed to wind up S & M Distributing. Bleeke asked Ruse if he was interested in selling his fifty percent interest to Parrish. Ruse and Bleeke met to determine the value of their respective fifty percent interests in S & M Distributing. Bleeke offered to pay Ruse $4,435.55 for his fifty percent interest in the assets of the business. Ultimately, Bleeke only paid Ruse $2,435.55 for his fifty percent interest because Bleeke discovered that Ruse had made an unauthorized $2,000 transfer from

the S & M Distributing account to the Pepperchinis.

Ruse met Parrish briefly on one occasion and had never discussed selling his partnership interest with Parrish. When Bleeke asked Ruse about selling his interest in the partnership to Parrish, Ruse authorized Bleeke to negotiate with Parrish on Ruse's behalf. Bleeke discussed the sale of Ruse's interest in the partnership with Parrish and made the representations he believed at the time to be true. Specifically, Bleeke told Parrish that S & M Distribution had an exclusive distribution agreement with RLED to sell Roaring Lion® in all but a few counties in Indiana, and that Ruse had $50,000 invested in the business. Accordingly, Bleeke told Parrish that he would need to pay Ruse $25,000 for his half of the partnership.

Parrish and Ruse, through Bleeke, negotiated the sale of Ruse's partnership interest in S & M Distributing to Parrish, and entered into a written purchase agreement. The terms of the agreement provided for the payment of a total of $25,250 in five monthly installments of $5,050, and specified that Ruse represented as a condition of payments that S & M Distributing was in good standing with RLED and had complied with all terms and conditions of its agreement with RLED.

In fact, S & M Distributing was not in good standing with RLED. Ruse had never signed the distribution agreement and fell short of its minimum purchase requirements. In addition, RLED Distributorships are transferable by the distributor only with the prior written approval of RLED. Ruse never requested permission from RLED to transfer the distributorship.

Parrish notified Ruse that he was withholding payment and rescinding the purchase agreement. Bleeke and Parrish subsequently entered into their own exclusive agreement with RLED. Ruse was not involved in the agreement between Bleeke, Parrish, and RLED. Bleeke brought an action against Ruse alleging claims under the Indiana Crime Victim's Relief Act, fraud, and breach of fiduciary duty. Ruse brought an action against Parrish alleging breach of contract and criminal conversion. After a bench trial on both complaints, the trial court entered findings of fact and conclusions thereon.[2] The trial court entered judgment for Bleeke against Ruse in the amount of $70,423.81, prejudgment interest in the amount of $7,869.52, plus additional prejudgment and postjudgment interest, attorney fees and costs. The trial court entered judgment against Ruse in his action against Parrish and dismissed Parrish's counterclaim against Ruse for fraud. Parrish's claims that Ruse's allegations against him were frivolous, groundless, or unreasonable were denied and dismissed by the trial court. Ruse now appeals both judgments against him, and Parrish cross-appeals.

## DISCUSSION AND DECISION

### A. Standard of Review

In both bench trials, the trial court entered findings of fact and conclusions thereon at the request of the parties. Indiana Trial Rule 52(A) provides in pertinent part that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility

2. We commend the trial court for the clarity and thoroughness of its entry, which greatly facilitated appellate review.

of the witnesses." When a trial court has entered specific findings and conclusions along with its judgment under T.R. 52, we apply a two-tiered standard of review. *Fox v. Green*, 856 N.E.2d 86, 88 (Ind.Ct.App. 2006). Construing the findings liberally in support of the judgment, we consider whether the evidence supports the findings. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *MCS LaserTec, Inc. v. Kaminski*, 829 N.E.2d 29, 34 (Ind.Ct.App.2005). We must then determine if the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* We will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.*

### B. Bleeke's Claims against Ruse[3]

#### 1. Deception and conversion of partnership assets

■ Ruse first argues that the trial court erred by entering judgment in favor of Bleeke for theft by deception and conversion of partnership assets. Further, Ruse argues that since the trial court erred by finding that he committed theft by deception, Bleeke is not entitled to treble damages and attorney fees under the Indiana Crime Victim's Relief Act ("the Act").[4]

■ The Act provides in pertinent part as follows:

If a person suffers a pecuniary loss as a result of a violation of IC 35–43, IC 35–42–3–3, IC 35–42–3–4, or IC 35–45–9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.

(2) The costs of the action.

(3) A reasonable attorney's fee. . . .

Unlike in a criminal trial, a claimant under the Act need only prove by a preponderance of the evidence that the criminal act was committed by the defendant. *White v. Indiana Realty Assoc. II*, 555 N.E.2d 454, 456 (Ind.1990). A criminal conviction is not required for recovery, but all elements of the alleged criminal act must be proven by the claimant. *Id.*

■ Bleeke claimed at trial that Ruse obtained the $31,000 investment from Bleeke as a result of theft by deception, and that Ruse converted partnership assets. Accordingly, Bleeke was required to demonstrate by a preponderance of the evidence that Ruse exerted unauthorized control over his property. Indiana Code section 35–43–4–3 provides that a person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor. A person's control over property of another person is "unauthorized" if it is exerted without the other person's consent or by creating or confirming a false impression in the other person. Ind.Code § 35–43–4–1(1) and (4).

---

**3.** Here, the record reveals and the findings reflect that Bleeke and Ruse met to determine their fifty percent interest in S & M Distributing and wind up the business. *See Tr.* at 54–59. Neither party has raised an issue regarding the general rule that one partner cannot sue another to recover profits or to recover his share of partnership assets where the partnership is unsettled. *Douthit v. Douthit*, 133 Ind. 26, 33, 32 N.E. 715, 717 (1892). Accordingly, we do not reach such issue.

**4.** *See* Ind.Code § 34–24–3–1.

Furthermore, in order to prove theft by creating a false impression, Bleeke was required to establish that he relied upon the false impression. *See Dunnuck v. State*, 644 N.E.2d 1275, 1278 (Ind.Ct.App.1994) (person relinquishing control of property must rely on misrepresentation). The claimant is not required to show that his reliance was reasonable. *Snelling v. State*, 163 Ind.App. 644, 648, 326 N.E.2d 606, 609 (1975). "The test is whether the representation deceived the person to whom made, not whether it would have deceived a person of ordinary prudence." *Harwei, Inc. v. State*, 459 N.E.2d 52, 57 n. 7 (Ind.Ct.App.1984) (citing *Lefler v. State*, 153 Ind. 82, 54 N.E. 439 (1899)). Additionally, the representations creating the false impression must be of a past or existing fact. *Dunnuck*, 644 N.E.2d at 1278.

Ruse argues that Bleeke was estopped from any claim for damages against Ruse because Bleeke failed to perform any due diligence or inquire into the true status of the business into which he was buying. This argument fails because "it is no defense [under the Indiana Crime Victims' Act] that the victim should have known better." *Harwei*, 459 N.E.2d at 57 n. 7 (citing *Snelling*, 163 Ind.App. at 648, 326 N.E.2d at 609, cited in *Snelling*, 167 Ind.App. 70, 77, 337 N.E.2d 829, 834 (1975)). The evidence established that Ruse represented to Bleeke that he had paid $50,000 for the exclusive rights to distribute Roaring Lion® in Indiana, and that Ruse would sell to Bleeke a fifty percent interest in the business for $25,000. Ruse presented some conflicting evidence on this point, arguing that Bleeke came up with the $50,000 figure or that they jointly arrived at the figure. However, the trial court, which was in the best position to determine the credibility of the witnesses, found Bleeke's testimony more credible on the issue of the creation of the false impression. The trial court specifically found that Ruse's testimony was not credible. We will not reweigh the evidence or reassess the credibility of the witnesses.

Additionally, the trial court found that Ruse had paid $7,150, far less than $50,000, for his initial investment in the Roaring Lion® distributorship, a few accounts, and some inventory not contributed to S & M Distributing. The trial court specifically found that Ruse's testimony that he told Bleeke the business was *worth* $50,000 was not credible. The trial court noted that at the time of the negotiations there were five accounts producing minimal profit, and, by Ruse's own testimony, inventory of little value. The trial court's findings are supported by the evidence and the trial court was in the best position to determine the credibility of witnesses.

Ultimately, the trial court found that Bleeke had sustained his burden of establishing by a preponderance of the evidence that Ruse exerted unauthorized control over Bleeke's money: $21,425 ($25,000 minus $3,575 (1/2 of Ruse's $7,150)), by creating a false impression in Bleeke's mind that Ruse had invested $50,000 for the exclusive rights to sell Roaring Lion® in Indiana. The trial court did not err.

Ruse also challenges the trial court's award of damages under the Act. We review the award of damages above the actual damages for an abuse of discretion. *MCS LaserTec, Inc.*, 829 N.E.2d at 35. Here, the trial court awarded Bleeke actual damages, treble damages, attorney fees, and costs in pursuing this claim against Ruse, all as authorized by statute. The trial court's award was not an abuse of discretion.

The evidence established that Bleeke and Ruse agreed that each of them would contribute $6,000 to be used as working

capital in S & M Distributing. Bleeke paid Ruse $6,000 for that purpose. There was no evidence that Ruse also contributed $6,000 as agreed. Ruse opened a business checking account at Tower Bank, but opened the account by contributing only $200. Ruse used S & M Distributing money from the account to pay non-S & M Distributing obligations. The trial court found that Ruse misused the account funds, but did not exercise unauthorized control over the account as Bleeke had access to and the ability to exercise some measure of control over the account. Consequently, the trial court found that Bleeke was entitled to damages in the amount of $6,148.81, which represents the initial investment of $6,000 for working capital, plus $348.81 in S & M Distributing funds that were used to pay other obligations, minus a $200 credit to Ruse for opening the business checking account. The trial court found that treble damages were not appropriate as to this part of the judgment because Ruse's misuse of the funds did not rise to the level of unauthorized control.

Ruse points to his own testimony about money he claims he contributed to S & M Distributing to attempt to establish that he more than matched Bleeke's investment of $6,000 in working capital. However, the trial court evaluated the evidence and assessed the credibility of the witnesses in reaching its determination. We decline Ruse's invitation to reweigh the evidence. The trial court's conclusions are supported by the findings, and the findings are supported by the record.

Because we find that the trial court's conclusions are supported by the findings of fact, and the findings of fact are supported by the record, we also find that the trial court correctly entered judgment in favor of Bleeke pursuant to the Act result-ing in the trebling of damages and an award of attorney fees.

### 2. Common Law Fraud and Breach of Fiduciary Duty

 Ruse contends that the trial court erred by entering judgment in favor of Bleeke for common law fraud and breach of fiduciary duty. The trial court found that Bleeke had demonstrated that Ruse misrepresented to him that he paid $50,000 for the exclusive rights to distribute Roaring Lion® in Indiana and that he was also contributing $6,000 for working capital for S & M Distributing, that Ruse's representations were false, and Ruse was fully aware that the statements were false. The court found that a preponderance of the evidence demonstrated that Bleeke relied upon Ruse's misrepresentation, and that Bleeke was damaged in that he gave Ruse $31,000.

 Ruse takes issue with the trial court's finding that Ruse's misrepresentation that he was also contributing $6,000 for working capital supported Bleeke's claim for fraud because at best it was a misrepresentation of future conduct. The elements of actual fraud are: (1) a material representation of a past or existing fact by the party to be charged that; (2) was false; (3) was made with knowledge or reckless ignorance of its falsity; (4) was relied upon by the complaining party; and (5) proximately caused the complaining party's injury. *Youngblood v. Jefferson County Div. of Family & Children,* 838 N.E.2d 1164, 1169–70 (Ind.Ct.App.2005). Actual fraud may not be based upon representations of future conduct, broken promises, or representations of existing intent that are not executed. *Bilimoria Computer Sys., LLC v. Am. Online, Inc.,* 829 N.E.2d 150, 155 (Ind.Ct.App.2005). Proximate cause exists when there is some direct relation between the injury asserted and the injurious conduct alleged. *Holmes*

*v. SIPC*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1311, 117 L.Ed.2d 532 (1992).

Here, the trial court found that Ruse had misrepresented that his initial investment was $50,000. Assuming, *arguendo*, that the misrepresentation of the $6,000 matching capital investment was about a future act, there is enough evidence to support the trial court's legal conclusion that Ruse committed fraud. The trial court evaluated the credibility of the witnesses and found that Ruse misrepresented to Bleeke that his initial investment in the distribution business was $50,000, knowing that he had agreed to pay Smith $7,150 for the distribution rights, and that Bleeke relied upon that misrepresentation to pay Ruse $31,000. The trial court did not err.

 Ruse further argues that the trial court erred by finding that he had committed a breach of his fiduciary duty to Bleeke in their partnership. More specifically, Ruse argues that "since the 'cost' of $50,000 by Ruse occurred prior to the formation of S & M Distributing, there can be no breach of a fiduciary duty for a partnership that did not exist." *Appellant's Br.* at 28. Ruse argues that Bleeke never contributed as much money to the partnership as Ruse did, but divided the assets equally when winding up the business.

 Partners owe a fiduciary duty to one another that continues until final termination of the business of the partnership. *Boushehry v. Ishak*, 550 N.E.2d 784, 788–89 (Ind.Ct.App.1990). The fiduciary relationship between partners requires each partner to exercise good faith and fair dealing in partnership transactions and toward co-partners. *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 442 (Ind. Ct.App.1990). The fiduciary relationship between partners prohibits a partner from taking any personal advantage touching

the business aspects or property rights of the partnership. *Id.*

 The trial court found that Ruse and Bleeke treated S & M Distributing as a partnership and that finding is supported by the record. As such, Ruse owed a fiduciary duty to his partner, Bleeke. The trial court found that Ruse failed to make his $6,000 contribution for working capital, and used the partnership checking account for his own purposes, withdrawing funds to pay non-S & M Distributing obligations. We decline Ruse's invitation for this court to reweigh the evidence. The trial court's conclusions are supported by the findings of fact, and the findings are supported by the record. The trial court did not err by finding that Ruse breached his fiduciary duty to Bleeke.

### C. Ruse's Claims against Parrish

Ruse brought a cause of action against Parrish alleging breach of contract and criminal conversion. More specifically, on the breach of contract claim, Ruse alleged that Parrish breached his agreement with Ruse to purchase his interest in S & M Distributing by failing to make payment as provided in the agreement.

 Where a party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *MCS LaserTec, Inc.*, 829 N.E.2d at 34. A judgment is contrary to law when the evidence is without conflict and all reasonable inference to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

 The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d

649, 655 (Ind.Ct.App.2004). The existence of a contract is not at issue here.

Generally, construction of the terms of a written contract is a question of law and reviewed *de novo*. *Id.* at 656. The goal of contract interpretation is to ascertain and give effect to the parties' intent. *Id.* When interpreting the meaning of the words used in a contract, we must first determine if the contract is ambiguous. *Id.* A contract is not ambiguous merely because a controversy exists. *Id.* Instead, ambiguity will be found when a contract is susceptible to more than one interpretation as measured by the standard of whether reasonable minds could differ as to its meaning. *Id.* Absent ambiguity, we will give the terms of a contract their plain and ordinary meaning. *Id.*

■ The purchase agreement between Parrish and Ruse provided that "Ruse represents as a condition of payment that S & M Distributing is in good standing with RLED, LLC and has complied with all terms and conditions of any agreement with RLED, LLC." *Appellant's App.* at 197. The trial court found that the contractual provisions were not ambiguous. That finding is supported by the record.

■ The agreement contained the condition precedent that S & M Distributing was in good standing with RLED and had complied with all terms and conditions of any agreement with RLED. Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises. *AquaSource, Inc. v. Wind Dance Farm, Inc.*, 833 N.E.2d 535, 539 (Ind.Ct.App.2005). Here, the condition precedent to Parrish's payment was S & M Distributing's good standing with RLED and compliance with agreements with RLED.

■ The trial court found that Ruse had not complied with all terms and conditions of the exclusive distribution agreement. First, there was no evidence that Ruse had signed the exclusive distribution agreement. Second, S & M Distributing did not purchase the required quantities to maintain exclusivity under the exclusive distribution agreement. Third, Ruse failed to seek prior written approval from RLED before transferring any rights to Parrish. The trial court correctly found that Ruse's breach of contract action against Parrish failed.

■ Ruse claims that Parrish committed criminal conversion of S & M Distributing's assets. In order to prevail on a claim of criminal conversion, Ruse was required to establish that Parrish knowingly or intentionally exerted unauthorized control over assets belonging to Ruse. I.C. § 35-43-4-3. The offense of conversion does not apply to the failure to pay a debt. *Tobin v. Ruman*, 819 N.E.2d 78, 88 (Ind. Ct.App.2005). Indiana Code section 35-43-4-1 provides that a person exerts control over property by obtaining, taking, carrying, driving, leading away, concealing, abandoning, selling, conveying, encumbering, or possessing property, or securing, transferring or extending a right to property. The trial court correctly found that Ruse has failed to sustain that burden.

S & M Distributing lost its exclusive right to distribute Roaring Lion® in Indiana when, in part, it failed to purchase the required quantities to maintain exclusivity. Accordingly, Parrish, Bleeke or anyone else with authorization from RLED was free to sell the accounts. Ruse did not obtain RLED's approval to transfer any rights. Consequently, Parrish could not have exerted control over those rights. To the extent S & M Distributing owned hoses installed in clients' establish-

ments, Ruse presented no evidence as to the ownership or value of those hoses, or evidence of Parrish's mens rea. The trial court also correctly noted that Ruse voluntarily intended to part with whatever property was covered by the purchase agreement with Parrish and that at most, the conduct alleged involved a contract dispute.

Affirmed.[5]

NAJAM, J., and BARNES, J., concur.

[5]. Because we are affirming the trial court's judgment in favor of Parrish, we do not reach Parrish's cross-appeal argument that the trial court should have granted Parrish's motion for summary judgment.