FILED

Feb 12 2020, 5:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

John R. Helm
Schreckengast & Helm
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION

Paul Petro
Petro Law Firm LLC
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

John B. Drummy
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Monika Schmidt,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Allstate Property and Casualty<br>Insurance Company,<br>*Appellee-Defendant* | February 12, 2020<br><br>Court of Appeals Case No.<br>19A-CT-1489<br><br>Appeal from the Johnson Superior<br>Court<br><br>The Honorable Marla Clark, Judge<br><br>Trial Court Cause No.<br>41D04-1408-CT-125 |

**Crone, Judge.**

# Case Summary

Monika Schmidt was injured in an accident while riding with a friend, who was insured by Allstate Property and Casualty Insurance Company. Schmidt sued her friend and the underinsured driver of the other vehicle for negligence. Schmidt, who qualified as an insured under her friend's policy, demanded the underinsured motorist coverage limits from Allstate. Schmidt later amended her complaint to include a claim alleging that Allstate owed her a duty of good faith and fair dealing as its insured and that it breached that duty in handling her underinsured motorist claim. Allstate filed a motion for summary judgment on the bad-faith claim. The trial court granted Allstate's motion, concluding that an insurer does not owe a duty of good faith and fair dealing to an insured who is not the policyholder. On appeal, Schmidt argues that the trial court erred in granting summary judgment on that basis. We agree and therefore reverse and remand for further proceedings.

# Facts and Procedural History[1]

The relevant facts are undisputed. In October 2012, Schmidt was a passenger in a vehicle driven by her friend, Deborah Fisher. A vehicle driven by Robert Bromley collided with Fisher's vehicle, and Schmidt was injured. Bromley held a Progressive insurance policy on his vehicle with $50,000 per person/$100,000

---

[1] We remind Schmidt's counsel that an appellant's statement of facts "should be a *concise* narrative of the facts stated in the light most favorable to the judgment and *should not be argumentative.*" *Ruse v. Bleeke*, 914 N.E.2d 1, 4 n.1 (Ind. Ct. App. 2009) (emphases added).

per accident liability coverage. Fisher held an Allstate insurance policy on her vehicle with $100,000 per person/$300,000 per accident liability coverage, as well as underinsured motorist coverage of $100,000. Schmidt qualified as an insured under Fisher's policy, which defines "Insured Person(s)" in pertinent part as "any person while in, on, getting into or out of, or getting on or off of an insured auto with your permission[.]" Appellant's App. Vol. 2 at 64. The policy provides that Allstate "will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured [i.e., underinsured[2]] auto because of ... bodily injury sustained by an insured person" that is "caused by accident and arise[s] out of the ownership, maintenance, or use of an uninsured auto." *Id.*

[3] In August 2014, Schmidt filed a complaint against Bromley and Fisher, alleging that both negligently operated their vehicles. Allstate defended Fisher. Schmidt demanded Fisher's policy limits for underinsured motorist coverage from Allstate. After unsuccessful settlement negotiations, Schmidt amended her complaint to include an underinsured motorist claim against Allstate and a

---

[2] The policy defines "uninsured vehicle" in pertinent part as

> an underinsured motor vehicle which has bodily injury liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for bodily injury liability by the financial responsibility laws of Indiana, but:
>
> a. in an amount less than the applicable limit of liability for this coverage shown on the Policy Declarations; or
>
> b. available limits have been reduced to less than the applicable limit of liability for this coverage as shown on the Policy Declarations.

Appellant's App. Vol. 2 at 65.

bad-faith claim based on Allstate's handling of that claim. Schmidt alleged that Allstate breached its duty of good faith and fair dealing with respect to her as its insured by failing to promptly inform her of the existence of the underinsured motorist coverage under its policy, failing to promptly respond to her coverage claim, failing to make a reasonable settlement offer, failing to promptly assign an adjuster to her claim, falsely asserting that she had to file suit against Allstate before her claim would be considered, and demanding that Fisher be dismissed from the lawsuit before it would consider Schmidt's claim, among other things. Allstate and Schmidt ultimately settled the underinsured motorist claim. In February 2016, Bromley was dismissed from the case.

[4] In April 2017, Allstate filed a motion for summary judgment, asserting that it did not act in bad faith in handling Schmidt's underinsured motorist claim. Schmidt filed a response and designated evidence regarding Allstate's handling of that claim. In September 2017, the trial court issued an order denying Allstate's motion, concluding that a genuine issue of material fact existed regarding whether Allstate had acted in bad faith.

[5] In October 2017, Allstate filed a second motion for summary judgment, asserting for the first time that it did not owe Schmidt a duty of good faith because she "is not the named insured under the insurance policy, or even a

party to the contract of insurance[.]" Appellant's App. Vol. 7 at 2.[3] Schmidt filed a response and designated evidence in opposition to Allstate's motion. She also filed a motion for sanctions and contempt, which was not included in the record before us.

In March 2018, the trial court issued an order that reads in relevant part as follows:

> 2. Under Indiana law, there is an implied duty of good faith in all insurance contracts that an insurer will act in good faith with its insured. *Gooch v. State Farm Mut. Auto Ins. Co.*, 712 N.E.2d 38, 40 (Ind. Ct. App. 1999) (citing *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993)). The *Gooch* court described the *Erie* decision as establishing "the duty of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation." *Id.*
>
> 3. The *Erie* court based its decision to recognize a duty of good faith and fair dealing on the unique nature of insurance contracts, public policy, and the unavailability of punitive damages in contract cases. *See Eri[e]*, 622 N.E.2d at 519. However, it did not determine the precise extent of the duty. *Id.* In support of its decision, however, it surveyed and noted the jurisdictions that recognized a cause of action in some form for the breach of the duty to exercise good faith in **first-party litigation.** *See id.* at 519 n.1 (Ind. 1993) (emphasis added).
>
> 4. In *Cain v. Griffin*, 849 N.E.2d 507, 511 (Ind. 2006), the plaintiff

---

[3] In its answer to Schmidt's amended complaint, Allstate admitted that it owed Schmidt a duty of good faith and fair dealing as its insured. After the trial court denied its first summary judgment motion, Allstate sought leave to amend its answer to a denial, which the trial court ultimately granted in the instant summary judgment order. Schmidt has not appealed that ruling.

was a patron at a restaurant when she slipped and fell. She made a claim against the restaurant owner's insurer and asserted a claim for bad faith. The trial court granted summary judgment, and this was affirmed by the Court of Appeals. In affirming the trial court, the Indiana Supreme Court explained that a "special relationship" exists between an insurer and its insured in a first-party claim. It noted that its *Erie* opinion did not identify any duty of good faith that an insurer owes a third-party claimant. Because *Erie* dealt with the duty of an insurer to its insured, and because the plaintiff was only a third party to the insurance contract the Court found no conflict between the grant of summary judgment on the plaintiff's bad faith claim and the holding in *Erie*....[4]

5. In *Martinez v. State Farm Mut. Auto. Ins. Co.*, No. 2:15 CV 137, 2016 U.S. Dist. LEXIS 42956, at *1-3 (N.D. Ind. Mar. 31, 2016), the federal court was faced with precisely the issue presented to this Court here. That court noted that insurers have a duty to deal in good faith with their insured, but further noted that "under Indiana law, third-party beneficiaries cannot sue an insurer in tort for bad faith." *Id.* (citing *Cain*, 849 N.E.2d at 515). The court recognized that the Indiana Court of Appeals had adhered to a strict interpretation of *Cain*. In its analysis, the court noted the plaintiff's argument that she was an "insured," under the terms of the insurance policy. It concluded that this provision arguably put her in privity of contract with the insurer, but rejected her argument that she could assert her bad faith claim because she was not the named insured in the insurance contract. It explained that she lacked the "special relationship" necessary to establish a duty on the insurer's part to act towards her in good faith and therefore granted the insurer's motion for partial summary judgment. *Martinez*, at *4-5.

---

[4] Here, the trial court cited two memorandum decisions from this Court, which have no precedential value pursuant to Indiana Appellate Rule 65(D).

6. Similarly, here, because [Schmidt] is an "insured," but not a policyholder who had entered a contract and paid premiums to Allstate, she had no "special relationship" with Allstate, and therefore under Indiana law, is not entitled to assert a claim of bad faith.

7. For these reasons, Allstate's motion for partial summary judgment is **GRANTED** and judgment is entered in favor of Allstate and against Schmidt on Count 3 of her Second Amended Complaint.

…

Although the Court does not condone Allstate's actions in asserting this defense belatedly, because Allstate prevailed on the merits, [Schmidt's] Motion for Sanctions and Contempt is **DENIED.**

Appealed Order at 5-7. Schmidt filed a motion to certify the order for interlocutory appeal, which the trial court granted, but this Court declined to accept jurisdiction. In June 2019, the trial court issued an order approving the stipulated dismissal of Fisher from the case and directing entry of final judgment for Allstate. This appeal ensued.

# Discussion and Decision

Schmidt contends that the trial court erred in granting summary judgment on the basis that Allstate does not owe her a duty of good faith and fair dealing as its insured. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Ingram v. Diamond Equip., Inc.*, 118 N.E.3d 1, 6 (Ind. Ct. App. 2018),

*trans. denied* (2019). "Generally, the existence of a duty is a pure question of law appropriate for disposition by summary judgment." *D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1128 (Ind. Ct. App. 2018), *trans. denied*. Accordingly, we review that issue de novo. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). "A trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this Court." *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). "The party that lost in the trial court has the burden of persuading us that the trial court erred." *Id.*

[8] At the outset, we observe that no published Indiana Supreme Court or Court of Appeals case has squarely held that an insurer does not owe a duty of good faith and fair dealing to an insured, named or unnamed, who is not the policyholder.[5] To the extent that the cases mentioned in the trial court's order may suggest that no such duty exists, we believe that such a proposition is untenable and unjust.

[9] In *Erie*, the leading case cited by the trial court, Hickman was injured in a collision with an uninsured motorist while driving a vehicle owned by her mother, Smith. "Smith's vehicle was insured by a policy issued by Erie, which

---

[5] In *Stewart v. Walker*, 597 N.E.2d 368 (Ind. Ct. App. 1992), another panel of this Court stated, "[W]e believe it sound policy to … impose a duty on an insurer faced with an uninsured motorist claim made by an injured passenger of its insured of bearing itself with all good faith towards the claimant[.]" *Id.* at 375 (quotation marks omitted). Amicus Indiana Trial Lawyers Association characterizes this statement as a holding, but it is actually dicta within dicta.

provided only liability and uninsured motorist coverage." *Erie*, 622 N.E.2d at 521. Smith reported the accident to Erie and requested "reimbursement under her uninsured motorist coverage." *Id*. Erie denied the claim based on its determination that Hickman was more than fifty percent at fault for the accident. Smith and Hickman sued Erie for breach of contract and bad faith; our supreme court described this as "a first-party claim[.]" *Id*. at 517. Although *Erie* is silent on this point, this leads us to believe that Hickman, like Schmidt in this case, was an additional insured under the policy. *See Bergerud v. Progressive Cas. Ins.*, 453 F. Supp. 2d 1241, 1249 (D. Nev. 2006) ("A claimant seeking [uninsured/underinsured motorist] benefits is a first-party claimant because such benefits are available only to individuals whom an insurer has defined as 'insured.' Thus, the insurer has agreed to cover them regardless of whether they contracted for the insurance coverage or paid premiums."). Consequently, we are unpersuaded by the trial court's reliance on *Cain*, in which the plaintiff was not an additional insured and thus was considered a third-party beneficiary under the defendants' policy's medical payments provision.[6] We are also

---

[6] Regardless of whether one considers an additional insured seeking underinsured motorist coverage to be a first-party claimant under the vehicle owner's policy per *Erie* and *Bergerud* or an intended third-party beneficiary of the policy, *see Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 141 (Ind. 2005) (acknowledging debate over terminology regarding injured passengers as additional insureds), the critical fact for purposes of our analysis is that Allstate specifically agreed to provide such coverage to additional insureds like Schmidt under the terms of its policy. Schmidt points out that claims like hers "are claims that both the insurance company and the [policyholder] anticipated and considered in obtaining and providing the insurance coverage." Appellant's Br. at 32.

unpersuaded by the trial court's reliance on *Martinez*, which, although factually similar to this case, relied heavily on *Cain*'s analysis.

[10]     After the *Erie* case went to trial, the jury found for Hickman and Smith and awarded them compensatory and punitive damages. Erie appealed, and this Court reversed the punitive damages award "on the grounds that punitive damages were not recoverable in a breach of contract action." *Erie*, 622 N.E.2d at 517-18. Our supreme court granted transfer to "address the question of whether a tort remedy [is] available to an insured when the insurer fails to fulfill duties imposed upon it by law." *Id.* at 518. The court stated,

> It is axiomatic that tort obligations arise, not from an agreement between the parties, but by operation of law. *Webb v. Jarvis*, [575 N.E.2d 992, 995 (Ind. 1991)]. Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. Whether breach of this duty constitutes a tort involves a judicial balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb*[, 575 N.E.2d at 995[7]].
>
> Clearly, a relationship exists between an insurer and its insured because they are in privity of contract. However, the existence of a contract, standing alone, does not give rise to the required "special relationship" to support imposition of a tort duty. Rather, it is the unique character of the insurance contract which supports the conclusion that there is a "special relationship."

---

[7] Actually, the *Webb* court stated that these three factors "must be balanced" in determining whether "to impose a duty at common law[,]" not in determining whether a duty was breached, i.e., whether a tort was committed. 575 N.E.2d at 995.

This contractual relationship is at times a traditional arms-length dealing between two parties, as in the initial purchase of a policy, but is also at times one of a fiduciary nature, *see, e.g., Richey v. Chappell*[, 594 N.E.2d 443, 447 (Ind. 1992),] (statements from the insured to the insurer concerning an occurrence which may be the basis of a claim by a third party are privileged from disclosure by the attorney-client privilege), and, at other times, an adversarial one, as here in the context of a first-party claim. Easily foreseeable is the harm that proximately results to an insured, who has a valid claim and is in need of insurance proceeds after a loss, if good faith is not exercised in determining whether to honor that claim. Given the *sui generis* nature of insurance contracts, then, we conclude that it is in society's interest that there be fair play between insurer and insured. These factors, coupled with our return to the rule of no punitive damages in contract cases, leads us to conclude that recognition of a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith is appropriate.

*Id*. at 518-19 (some citations omitted).

[11] Here, in urging us to conclude that Allstate owes her a duty of good faith and fair dealing under the three-part *Webb* analysis, Schmidt first notes that the relationship between her and Allstate "is that of insured and insurer" and that she had "duties and obligations under the cont[r]act of insurance." Appellant's Br. at 48. More specifically, Schmidt observes that she "was in a relationship with Allstate that was both fiduciary in nature[,] requiring her to give statements, make honest representations, submit to medical examination[,] and provide private health information at the request [of] Allstate, and adversarial in the context of her first-party [underinsured motorist] claim." *Id*. Aside from the fact that Schmidt did not sign the insurance contract and pay premiums on

the policy, we see little difference between the nature of her contractual relationship with Allstate as an additional insured and the nature of Fisher's so-called "special relationship" with Allstate as a policyholder.

[12] Schmidt further asserts that,

> as the court stated in *Erie*, easily foreseeable is the harm that proximately results to an insured, who has a valid claim and is in need of insurance proceeds after a loss, if good faith is not exercised in determining whether to honor that claim.… Schmidt had a contractual right to underinsured coverage, however, Schmidt could do little to enforce that right.

*Id*. at 48-49. We agree with this assertion.

[13] Finally, with respect to public policy concerns, Schmidt contends that "it is in society's best interest that there be fair play between insurer and insured. Indiana Courts have long recognized this need, and the legislature has recognized it as well by implementing the unfair claims practices act." *Id*. at 49 (citation omitted). Indeed, our legislature has seen fit to treat all insureds equally when it comes to protecting them against unscrupulous behavior by insurers. Indiana Code Section 27-4-1-4.5 enumerates unfair claim settlement practices for which an aggrieved person may file a complaint with the insurance commissioner; the statute does not differentiate between policyholders and additional insureds. *See* Ind. Code § 27-4-1-4.5 (listing over fifteen unfair practices such as "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed" and "[n]ot

attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear").[8]

[14] Moreover, our legislature has required that motorists maintain minimum amounts of liability insurance under threat of criminal and administrative penalties, Ind. Code §§ 9-25-4-1 and 9-25-8-2, and has also required that insurers make uninsured and underinsured motorist coverage available to motor vehicle owners "for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury[.]" Ind. Code § 27-7-5-2. This statute does not differentiate between policyholders and additional insureds. In light of this government-mandated and -regulated insurance market, with an emphasis on providing coverage for innocent insureds who are injured by uninsured or underinsured motorists, we can think of no principled reason for *not* requiring insurers to deal in good faith with all insureds. As Schmidt persuasively observes,

> The policyholder purchases insurance for peace of mind. Surely policyholders entering into the insurance contract expect that their family and friends (who are also being provided coverage by the policyholder [as either permissive drivers or permissive passengers]) will be treated fairly by their insurance company. Otherwise, their relationships and friendships may be ruined and the financial lives of their loved ones devastated because the

---

[8] Violations may result in civil penalties of up to $50,000 and/or suspension or revocation of an offender's license or certificate of authority. Ind. Code § 27-4-1-6(a).

insurance company does not want to treat such [additional] insureds fairly.

Appellant's Br. at 32. Assuming that a policyholder enjoys a "special" or "first-among-equals" status with respect to all other insureds covered by a policy, there can be little doubt that dealing with those other insureds in good faith only benefits the policyholder, even when (or especially when) her interests are adverse to those of additional insureds, as in this case.[9]

[15] In sum, a balancing of the three *Webb* factors weighs decisively in favor of concluding that an insurer owes a duty of good faith and fair dealing to an insured who is not the policyholder. We therefore reverse the trial court's entry of summary judgment for Allstate and remand for further proceedings on Schmidt's bad-faith claim, including her motion for sanctions and contempt. As mentioned above, the trial court has already determined that a genuine issue of material fact exists regarding whether Allstate acted in bad faith.

[16] Reversed and remanded.

Bradford, C.J., and Pyle, J., concur.

---

[9] Allstate attempts to draw a dispositive distinction between a "named insured" such as Fisher and a "policy-defined insured" such as Schmidt. Appellee's Br. at 9. With apologies to Gertrude Stein, an insured is an insured is an insured is an insured for purposes of an insurer's duty of good faith and fair dealing.