# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**WILLIAM H. TOBIN**
South Holland, Illinois

ATTORNEY FOR APPELLEES:

**DANIEL A. MEDREA**
Lucas Holcomb & Medrea
Merrillville, Indiana



FILED
Aug 14 2012, 9:26 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: RUETH DEVELOPMENT COMPANY, ) 
An Indiana Limited Partnership, )      No. 45A03-1110-CP-468

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Kavadias Schneider, Judge
Cause No. 45D01-9311-CP-1746

**August 14, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

In this consolidated appeal, Appellants-Respondents, Herbert R. Rueth (Herbert), Robert J. Rueth (Robert), and Thomas J. Rueth (Thomas), as general partners of Rueth Development Company Limited Partnership (RDC), and Barbara Bishop, Janine Rueth, Rosemary Rueth, Kevin Rueth, Timothy Rueth (Timothy), Aaron M. Rueth, Rebecca Rueth, Ryan T. Rueth and the L. Herbert Rueth Residual Trust, as limited partners of RDC (collectively, Appellants), appeal the trial court's grant of relief vacating the dismissal of dissolution proceedings of RDC and issuance of a temporary injunction in favor of Appellees-Petitioners, Harold G. Rueth Jr. (Hal) as general partner of RDC; Hal, Claudia Rueth, Nancy Rueth, as limited partners of RDC and as co-executors of the Estate of Harold G. Rueth, deceased; and Jerome Rueth, Richard Rueth, and the Harold G. Rueth Residual Trust, as limited partners of RDC (collectively, Appellees).

We affirm in part, reverse in part, and remand.

## ISSUES

Appellants raise eight issues in this consolidated appeal, three of which we find dispositive and restate as the following:

(1) Whether the trial court abused its discretion by granting Appellees' T.R. 60(B) motion to vacate the trial court's dismissal of RDC's dissolution proceedings;

2

(2) Whether the trial court abused its discretion in allowing Appellees to pursue their claims against Appellants as a derivative action under Ind. Code § 23-16-11-1; and

(3) Whether the trial court abused its discretion by granting a preliminary injunction enjoining RDC's capital distributions and restricting its payment of attorney fees.

## FACTS AND PROCEDURAL HISTORY

### I. *Background*

RDC is an Indiana Limited Partnership formed on January 20, 1956 to engage in the land development business. RDC's limited partnership agreement (Partnership Agreement) has been amended several times since, with its Ninth Amendment effective on December 30, 1983. As of the Ninth Amendment, RDC had two general partners, Harold Rueth (Harold) and Helen L. Rueth (Helen), and nine limited partners, comprised of individuals and various family trusts. Harold and Helen were siblings who each had two votes regarding the conduct of the limited partnership. Helen's children included Herbert, Timothy, and Robert, who were limited partners of RDC until Helen's death in 2006. Hal and Thomas are Harold's children and were limited partners of RDC until Harold's death in 2008. The Partnership Agreement reflected the limited partnership's allocation of power along family lines, with persons from Harold's line referred to as "the

family of Harold G. Rueth," and those from Helen's line referred to as "the family of L. Herbert Rueth." (Appellants' 60(B) App. p. 149).[1]

Two other companies are relevant to this dispute. First, RDC owned and operated Superior Lumber Company (Superior Lumber), a lumber yard and supplier of construction materials. RDC paid Thomas and Robert to manage Superior Lumber on behalf of RDC. Second, H&H Rueth, Inc. (H&H) is a general contractor, with the company set up as a closely-held corporation in which Thomas, Herbert, Timothy, and Robert are the sole shareholders, officers, and directors. RDC has no ownership interest in H&H.

In 1991 or 1992 Harold became concerned with H&H's commercial interactions with Superior Lumber and RDC. H&H carried notably high account balances on its purchases of building materials from Superior Lumber and on its purchase of lots from RDC. Harold and Helen disagreed on RDC's commercial practices toward H&H and Harold sought to impose strict payment terms upon H&H. On July 9, 1992, Harold notified H&H and Superior Lumber that, as RDC's general partner, he expected H&H's outstanding balances to be brought up to date. H&H, in turn, sought direct instructions from Helen to permit RDC to continue transferring lots to H&H without payment of its current or outstanding account balances.

## II. *Dissolution Proceedings*

---

[1] As this appeal has been consolidated, we distinguish the briefs and appendices herein by referring to the specific appellate proceedings appeal in which they were filed.

On November 18, 1993, Harold filed an Application for Dissolution, Winding up, and Accounting of RDC (Application) in the Lake County Superior Court. Each limited partner was served with a summons and each return of summons was duly recorded by the clerk of court. On August 31, 1995, Harold filed an Amended Application. The Amended Application contained a new Count IV, alleging breaches of fiduciary duty by Helen, as general partner, and Thomas, Robert, Herbert, and Timothy, as limited partners. Specifically, Harold claimed that Helen, as general partner of RDC, Thomas and Robert, as co-managers of Superior Lumber, and Thomas, Robert, Herbert, and Timothy, as sole shareholder, officers, and directors of H&H, had acted contrary to the interests of RDC, its general partners and limited partners.

From 1994 to 2002, the general partners, limited partners, and other entities contested various claims involving RDC, with most claims tried and decided, settled, or dismissed. In one particular claim (referred to by the parties and the trial court as the "interest claim"), Harold sought interest on unpaid transactions between H&H, Superior Lumber, and RDC. The interest claim was bifurcated for trial on liability and damages. On June 22, 2001, the trial court issued an Order containing findings of fact and conclusions of law, determining that Thomas and Robert, as co-managers of Superior Lumber acted in a manner contrary to the interests of RDC by waiving Superior Lumber's mechanic's liens against properties developed by H&H, and had otherwise failed to enforce payment terms against H&H. Regarding its transactions with RDC, the trial court concluded that H&H had wrongfully accepted proceeds from the closing of

5

homes on lots purchased from RDC without payment to RDC of the outstanding balances.

Before the damage phase could be tried, RDC was found in violation of a consent decree with the U.S. Environmental Protection Agency (EPA) and was subjected to penalties of $7 million. RDC's funds were frozen and its dissolution proceedings were stayed in May 2002. RDC later settled the dispute with the EPA for $2.4 million.

On March 31, 2006, Helen died. Upon her death, her entire interest in RDC converted to a limited partner interest and transferred to the L. Herbert Rueth Residual Trust. Under the Partnership Agreement, Herbert and Robert could succeed Helen to become general partners provided that they transferred an amount equivalent to 0.5% of RDC's capital account from their limited partner accounts to an RDC general partner account. Robert and Herbert received one vote each as general partners while Harold retained two votes as general partner. On April 7, 2006, Herbert and Robert delivered to Harold a written notice of their intent to become general partners. Harold thereafter recognized Herbert and Robert as general partners.

On April 23, 2008, the trial court scheduled the damages phase on the interest claim for trial on September 28, 2008. On August 15, 2008, Harold died. Upon his death, his partnership interest converted to a limited partner interest and transferred to the Harold G. Rueth Residual Trust. Under Article VII of the Partnership Agreement, Thomas and Hal had a right to succeed him as general partners, provided that they transferred an amount equivalent to 0.5% of RDC's capital account from their limited

partner accounts to a general partner account. Thereafter, Thomas and Hal would receive one vote each as general partners. On August 22, 2008, Thomas sent written notice of his intent to become general partner to RDC's accountant.

On September 16, 2008, Appellants filed their Stipulation of Dismissal with Prejudice (Stipulation) pursuant to T.R. 41(A)(1)(b). The Stipulation provided three reasons for dismissal of RDC's dissolution proceedings with prejudice. First, following Harold's death, Thomas alone succeeded him as general partner and could exercise "the two votes formerly held by Harold." (Appellants' 60(B) App. p. 94). Second, as Thomas, Robert, and Herbert were in agreement on the management of RDC, the Stipulation recited that the condition precedent for RDC's judicial dissolution no longer existed under I.C. § 23-16-9-2 since their agreement resolved any deadlock and therefore permitted RDC to carry on its business under the Partnership Agreement. Third, continuing the dissolution proceedings had the potential to dilute RDC's two remaining assets, a storage facility and its interest in the Powers-Rueth and Associates Limited Partnership. The Stipulation contained the signatures of Herbert and Robert along with limited partners from the family of L. Herbert Rueth. The signatures of Thomas along with his children, also limited partners, represented the family of Harold G. Rueth.

On September 24, 2008, Appellees' counsel arranged a conference call with Appellants' counsel and the trial court to discuss the trial court's intention regarding the trial date in light of the Stipulation. The trial court explained that although it was removing the trial date, it required a response from counsel for Harold's estate or

7

Harold's survivors in interest. However, the trial court did not provide a timeframe for such response to be submitted. On October 2, 2008, the trial court entered its Order, dismissing RDC's dissolution proceedings with prejudice.

Following dismissal, on October 8, 2008, Hal elected to become a general partner of RDC. On October 10, 2008, Appellees filed a motion to vacate the dismissal of RDC's dissolution proceedings under T.R. 60(B). Appellees alleged three grounds to support their motion. First, Appellees contended that Thomas, Robert, and Herbert committed fraud upon the court by misrepresenting their status as the sole general partners and then dismissing claims against themselves. Further, they maintained that Appellants' dismissal of claims against themselves constituted a conflict of interest. Third, Appellants were not provided with a reasonable opportunity to object to the dismissal resulting in surprise and excusable neglect. Appellees' T.R. 60(B) motion also sought an injunction freezing RDC's bank accounts and certificates of deposit until the trial court ruled on their motion to vacate.

On October 14, 2008, the trial court vacated the dismissal, ordered hearings on the T.R. 60(B) motion, and issued a temporary injunction. It its Order, the trial court cited the propriety of Thomas, Robert, and Herbert acting as general partners in light of Appellees' allegations of fraud. On October 17, 2008, Appellees filed a motion for recusal of the trial judge. On October 22, 2008, in the same Order, the trial court first declared the injunction to be defective and then secondly, recused himself.

8

On October 20, 2008, Appellants appealed to this court. They argued that the trial court was without jurisdiction to vacate the dismissal and to order hearings on the T.R. 60(B) motion because Appellees were not parties to the dissolution proceedings. In an unpublished decision, this court found that the instant proceedings were for "the dissolution, winding up, and accounting for RDC" and concluded that Appellees were parties since they were each served with a summons and were therefore subject to the trial court's jurisdiction. *In re Rueth Development Co.*, No. 45A03-0811-CV-568, at *8 (Ind. Ct. App., May 28, 2009), *trans. denied.* As a result, the trial court's reassertion of jurisdiction, decision to vacate the dismissal, and setting hearings on Appellees' T.R. 60(B) motion were found proper. *Id*. at *9. Additionally, this court concluded:

> Indeed, it would be inequitable in these circumstances to preclude [Appellees] from filing a [T.R.] 60(B) motion and permit [Appellants] to dismiss with prejudice all of the claims against themselves, which the trial court had previously found as constituting breaches of fiduciary duty and fraud upon RDC and its limited partners. Even though [Appellants] were not specifically named as defendants in the caption of the proceedings regarding the dissolution, winding up, and accounting for RDC, serious allegations of wrongdoing were made against each of them.

*Id.* at *8. Further, we noted,

> it is apparent that this case was dismissed with prejudice solely because of the [Appellants'] self-serving representations that they were the sole general partners of RDC. Those misrepresentations were potentially fraudulent, which permitted the trial court to set aside the prior dismissal.

*Id*. at *9.

On May 18, 2010, the trial court began evidentiary hearings on the T.R. 60(B) motion. On April 6, 2011, the trial court issued its Findings of Fact and Conclusions of

Law vacating its October 2, 2008 Order dismissing RDC's dissolution proceedings with prejudice. The trial court concluded that, under the law of the case doctrine, Appellees were parties to the action and had standing to file their T.R. 60(B) motion. Although Appellees' T.R. 60(B) motion did not enumerate the specific provisions entitling them to relief, the trial court characterized Appellees' allegations as requests for relief under T.R. 60(B)(1-3) and (8).

The trial court found that while Thomas, Robert, Herbert were each general partners of RDC and Appellees had knowledge thereof, they nevertheless breached their fiduciary duties to RDC and all its limited partners by procuring a stipulated dismissal of the dissolution action without the consent of all partners. Concluding that a dismissal with prejudice made it impossible for Appellees to obtain relief and that Appellants failed to timely disclose their intent to file a stipulated dismissal, the trial court deemed such conduct to be constructive fraud. Further, the trial court concluded that Appellees were not afforded sufficient time to substitute a party in place of Harold and that any such failure to substitute was due to surprise or excusable neglect.

In fashioning a remedy, the trial court relied upon a constructive trust to disgorge benefits obtained by Appellants as a result of the dismissal and concluded that Appellees were entitled to relief under T.R. 60(B)(1-3) and (8). The trial court ordered that Appellees be entered as additional parties, including Hal as general partner. Relying upon I.C. § 23-16-11-1, the trial court allowed Appellees to "pursue the litigation as a derivative action against [Appellants] for and on behalf of RDC, to require an accounting

10

by [Appellants], and to pursue dissolution as to the interest of [Appellants] as a result of their wrongful conduct." (Appellants' 60(B) App. p. 83). On May 9, 2011, Appellants filed a motion to correct errors, which was denied by the trial court on September 19, 2011. On October 17, 2011, Appellants appealed the trial court's 60(B) ruling.

### III. *Injunctive Relief*

Early on in the proceedings, on November 1, 1995, pursuant to Harold and Helen's agreement, the trial court ordered that the parties' attorney fees be paid from RDC's assets subject to the submission of itemized billings. Following the trial court's October 2, 2008 Order, Thomas, Robert, and Herbert, as general partners, allegedly made capital distributions to themselves to reduce promissory notes owed by H&H to RDC as well as cash distributions to other limited partners. Further, Thomas, Robert, and Herbert refused to pay Appellees' attorney fees while paying Appellants' attorney fees.

One of RDC's few remaining assets consisted of its 39% interest in the Powers-Rueth and Associates Limited Partnership. On October 25, 2011, the Powers-Rueth and Associates Limited Partnership sold its interest in the Briar Ridge Country Club for $3 million. Appellees alleged that RDC's share of the sale proceeds may exceed $1 million, which was subject to imminent distribution.

On November 8, 2011, Appellees submitted a Verified Motion for Issuance of Temporary Restraining Order without Notice and Application for Preliminary Injunction. The motion was presented to the trial court as an emergency matter, with Appellees' counsel notifying Appellants' counsel a little more than an hour and a half before the

11

hearing. That same day, Hal and Appellees' counsel as well as Thomas and Appellants' counsel appeared before the trial court. On November 16, 2011, the trial court denied Appellees' motion but issued an Order that provided in relevant part:

> During the course of arguments issues were brought before the court which the court now addresses. The court takes notice of [o]rders previously entered in this case by [the former trial judge] wherein he ordered that attorney fees for all the parties' counsel were to be paid from the assets of RDC. The court is advised that the attorney fees for [Appellants' attorney] have been paid since September 29, 2008 through the end of 2010, but that none of the attorney fees for [Appellants' counsel] have been paid since September 29, 2008.
>
> IT IS THEREFORE ORDERED as follows:
>
> 1. No capital distributions to the general or limited partners of [RDC] shall be made without unanimous consent of all four (4) general partners.
>
> The majority partners of RDC, [Thomas, Robert, and Herbert] are hereby enjoined from making any capital distributions to the general or limited partners of RDC without the concurrence of [general partner Hal].
>
> 2. To the extent that attorney fees are to be paid to the parties' attorneys […] from the assets or funds of RDC, they are to be paid in equal amounts. That is to say that the majority general partners shall pay attorney fees to [Appellants' counsel] only to the extent that the same amount is paid to [Appellees' counsel].
>
> 3. The majority general partners are hereby enjoined from hereafter paying any attorney fees to [Appellants' counsel] for services rendered in connection with this case, past, present or future, pursuant to a statement for his services rendered, without at the same time paying the same amount to [Appellees' counsel], attorney for [Hal] and the other [Appellees] of record, pursuant to a statement for his services rendered, past, present, or future.

(Appellants' Injunction App. p. 74). On December 5, 2011, Appellants filed their notice of appeal challenging the November 16, 2011 Order. On April 16, 2012, Appellants

12

moved pursuant to Ind. Appellate Rule 38(B) to consolidate both appeals. On May 11, 2012, we ordered the appeals consolidated under a single cause number.

Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Appellants claim that the trial court abused its discretion by granting Appellees' T.R. 60(B) motion and thereby vacating the trial court's dismissal of RDC's dissolution proceedings with prejudice. In making this claim, Appellants argue that because the trial court found that Thomas, Robert, and Herbert constituted three of RDC's general partners, its grant of relief based on constructive fraud is incompatible with the statutory grounds for dissolution of a limited partnership. Next, Appellants assert that the relief ordered by the trial court is contrary to statutes governing dissolution and derivative actions involving limited partnerships. Separately, Appellants contest the trial court's injunction requiring unanimous consent by RDC's general partners for capital distributions and requiring payment of both parties' attorney fees in equal amounts. We will review Appellants' challenge to the April 6, 2011 Order (T.R. 60(B)) in the first part of this opinion and their challenge to the November 16, 2011 Order (injunction) in the second part.

## *I. Standard of Review*

The trial court's October 2, 2008 Order of dismissal with prejudice was made pursuant to T.R. 41(A)(1)(b), which allows for voluntary dismissal "by filing a stipulation of dismissal signed by all parties who have appeared in the action." Under

13

T.R. 41(F), "a dismissal with prejudice may be set aside by the court for the grounds and in accordance with the provisions of [T.R.] 60(B)." T.R. 60(B) governs motions for relief from judgment and provides in relevant part:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment […] for the following reasons […]:
>
>> (1) mistake, surprise, or excusable neglect;
>>
>> (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;
>>
>> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>>
>> […]
>>
>> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).
>
> […] A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense. […]

The trial court's decision to grant a party relief from judgment under T.R. 60(B) "is within its sound, equitable discretion," and is not subject to reversal unless there has been an abuse of discretion. *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and the effects of the facts, or if the trial court misinterpreted the law. *Jo. W. v. Je. W.*, 952 N.E.2d 783, 785 (Ind. Ct. App. 2011).

14

The burden is on the movant to demonstrate that relief under T.R. 60(B) is both necessary and just. *Fairrow v. Fairrow*, 559 N.E.2d 597, 599 (Ind.1990). Relief under T.R. 60(B) also requires that the movant make a *prima facie* showing of a meritorious defense for reasons (1), (2), (3), (4), and (8). *Smith v. Johnson*, 711 N.E.2d 1259, 1265 (Ind. 1999). A meritorious defense refers to "evidence that, if credited, demonstrates that a different result would be reached if the case were retried on the merits and that it is unjust to allow the default to stand." *Id*. The trial court may grant and we may affirm a T.R.60(B) motion "upon a ground not argued by the proponent if the court concludes that such is consistent with the duty of a court of equity to do justice." *State ex rel. Huppert v. Paschke*, 637 N.E.2d 150, 153-54 (Ind. Ct. App. 1994).

Where, as here, the trial court has prepared special findings under T.R. 52(A), we apply a two-tiered standard of review. *Stonger*, 776 N.E.2d at 358. We first determine if the evidence supports the findings, and then whether the findings support the judgment. *Id*. Trial court findings and conclusions will be set aside if clearly erroneous. *Id*. We may not reweigh evidence or determine witness credibility, and we accept the trial court's findings if there is evidence to sustain them. *Id*.

## II. *T.R. 60(B)(3)*

Although the trial court cited multiple provisions of T.R. 60(B) in its April 6, 2011 Order, it relied primarily upon T.R. 60(B)(3) to grant Appellees relief from the October 2, 2011 Order of Dismissal. It concluded that Thomas, Herbert, and Robert committed misconduct by procuring dismissal of the dissolution action without the consent of all

15

partners of RDC. The trial court held that such actions constituted a breach of fiduciary duty, failure to disclose, and constructive fraud entitling Appellees to relief under T.R. 60(B)(3).

Appellants raise a number of arguments throughout their brief challenging these conclusions, two of which we find dispositive. First, Appellants contend that as constituting a majority of RDC's general partners, they have an absolute right to dismiss litigation under the Partnership Agreement. Second, Appellants assert that the trial court confused a general partner's fiduciary duties with such party's adversarial rights in litigation with limited partners.

### A. *Constructive Fraud*

To obtain relief under Trial Rule 60(B)(3), the movant must show that (1) fraud, misrepresentation or other misconduct occurred; (2) such misconduct prevented the movant from fully and fairly presenting its case at trial; and (3) the movant has a meritorious defense. *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65, 73 (Ind. 2006). If a party cannot show that misconduct substantially prejudiced the party's presentation of its case, then "a court should not set aside an otherwise final judgment." *Id*. Fraud under T.R. 60(B)(3) encompasses actual and constructive fraud. *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005), *trans. denied*.

Constructive fraud arises by operation of law from a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. *In re Bender*, 844 N.E.2d 170, 182 (Ind. Ct. App. 2006), *trans. denied*.

16

A plaintiff alleging the existence of constructive fraud has the burden of proving the existence of a duty owing by the party to be charged to the complaining party due to their relationship, and the gaining of an advantage by the party to be charged with fraud. *Id.* In other words, "the plaintiff must prove a fiduciary or fiduciary-like relationship to establish constructive fraud." *Cash in a Flash, Inc. v. McCullough*, 853 N.E.2d 533, 538 (Ind. Ct. App. 2006). A presumption of fraud arises once the plaintiff establishes the existence of a fiduciary relationship. *Bender*, 844 at 182. The burden then shifts to the defendant to prove at least one of the following by clear and unequivocal proof: (1) that he or she made no deceptive material misrepresentations of past or existing facts or did not remain silent when a duty to speak existed; (2) that the complaining party did not rely on any such misrepresentation or silence; or (3) no injury proximately resulted from the misrepresentation or silence. *Id.*

B. *Limited Partnership Fiduciary Duty*

The Indiana Revised Uniform Limited Partnership Act (IRULPA), I.C. § 23-16-1-1, *et seq.*, governs Indiana limited liability partnerships. Under the IRLUPA, a limited partnership consists of two or more persons in a partnership where one or more persons are general partners and one or more persons are limited partners. I.C. § 23-16-1-9. With certain exceptions, general partners of limited partnerships possess the rights, powers, and obligations of a partner in a partnership without limited partners. I.C. § 23-16-5-3(a).

Under common law, general partners owe each other and the partnership fiduciary duties until final termination of the partnership. *Russ v. Bleeke*, 914 N.E.2d 1, 11 (Ind.

Ct. App. 2009). This fiduciary relationship between partners requires each partner to exercise good faith and fair dealing in partnership transactions and toward co-partners. *Id*. This relationship between partners prohibits a partner from taking any personal advantage touching the business aspects or property rights of the partnership. *Id*. Under I.C. § 23-4-1-23, made applicable to limited partnerships by I.C. § 23-16-12-3, "each partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

The trial court concluded that Thomas, Robert, and Herbert, as general partners of RDC, breached their fiduciary duties to all partners by obtaining a dismissal of the dissolution proceedings without the consent of Appellees. In particular, the trial court concluded that the June 22, 2001 Order established Thomas and Robert's liability to RDC as a result of a breach of their fiduciary duties and self-dealing involving the transactions underlying the interest claim. Further, H&H, a company in which Herbert, along with Thomas, Robert, and Timothy, was a shareholder and director, was also found to be liable to RDC. The Stipulation filed by Appellants under T.R. 41(A)(1)(B) sought to dismiss RDC's dissolution proceedings, resulting in the underlying dismissal of the breach of fiduciary duty claims against Thomas, Robert, and Herbert. While the limited partners from Helen's side of the Rueth family signed the stipulation, no signatures from Harold's line of the family appear, with the exception of Thomas and his children. Consequently,

18

there is little doubt that a dismissal of the interest claim would benefit Thomas, Robert, and Herbert personally because regardless of the amount of damages, they would be relieved from further contesting these claims.[2] Therefore, we find that the trial court did not err in finding that Thomas, Robert, and Herbert improperly sought dismissal without obtaining the consent of all RDC partners.

Because Appellees established that the dismissal by Thomas, Robert, and Herbert constituted a breach of a fiduciary duty, the burden shifted to these individuals to unequivocally show that no duty to speak or misrepresentation existed, that Appellees did not rely on such duty or misrepresentation, or that no injury proximately resulted from the dismissal. We agree with the trial court that Appellants did not meet their burden. Appellants sought only to contest the validity of the findings contained in the June 22, 2001 Order,[3] which the trial court found no need to revisit. We find no error here because the merits of the June 22, 2001 Order are not relevant; rather it is whether Thomas, Robert, and Herbert, by successfully procuring dismissal under these circumstances, acted fairly toward the partnership and the other partners. Apart from this

[2] Appellants protest their inability to challenge the validity of the June 22, 2001 Order at the T.R. 60(B) hearings. We find it unnecessary to address this contention because of the requirement that only a *prima facie* showing of a meritorious defense is required under T.R. 60(B). *Smith v. Johnston*, 711 N.E.2d 1259, 1265 (Ind. 1999).

[3] Appellants also argue that there was no evidence to suggest that Appellants' stipulation of dismissal was made to avoid personal liability on the interest claim. Specifically, Appellants assert that the only evidence on the extent of Thomas, Robert, and Herbert's liability under the June 22, 2001 Order consisted of testimony from Harold's former attorney. We find that this argument misses the point. Under T.R. 60(B), only a *prima facie* showing, *i.e.*, "one that will prevail until contradicted and overcome by other evidence, of a meritorious defense is required." *Smith*, 711 N.E.2d at 1265. We find that the June 22, 2001 sufficed in this regard.

19

contention, Appellants did not contest that Appellees detrimentally relied upon, or that an injury would proximately result from, the dismissal.

In light of the foregoing, we find that the trial court did not err in concluding that Appellants' stipulated request for dismissal of this case without the consent of all the partners constituted constructive fraud. We therefore conclude that the trial court did not abuse its discretion by granting Appellees relief from the October 2, 2008 Order under T.R. 60(B)(3). [4]

### III. *Relief Granted*

Appellants also challenge the trial court's grant of relief, characterizing it as "unlawful and unworkable." (Appellants' T.R. 60(B) Br. p. 38). After setting aside the dismissal, the trial court ordered that Hal be added to the action as a general partner, limited partner, and representative of Harold's estate, and that the other Appellees be added as limited partners, whether individually or as representatives of Harold's estate. The trial court further ordered that these additional parties:

---

[4] Appellants also challenged Appellees' T.R. 60(B) motion as fraudulently made and therefore had fraudulently procured our opinion in *Rueth I* given the trial court's findings that Thomas, Robert, and Herbert were general partners and that Appellees were aware of such status. Appellants also contend that rewarding Appellees relief from judgment under such circumstances contravenes fundamental maxims of equity. We note that although the trial court found Appellees' claims unfounded, it did not deem them fraudulently made. The trial court may grant and we may affirm a T.R. 60(B) motion "upon a ground not argued by the proponent if the court concludes that such is consistent with the duty of a court of equity to do justice." *State ex rel. Huppert*, 637 N.E.2d at 153-54. We therefore disagree with Appellants that the trial court's order of hearings on the motion and our holding in *Rueth I* restricted the trial court from granting relief upon other grounds. Simply because one ground failed does not mean that Appellees' alternate grounds were precluded from consideration.

may pursue the litigation as a derivative action against [Appellants] for and on behalf of RDC, to require an accounting by [Appellants], and to pursue dissolution as to the interest of [Appellants] as a result of their wrongful conduct pursuant to Indiana Statute.

(Appellants' 60(B) App. p. 83).

## A. *Judicial Dissolution*

Appellants dispute that the trial court possessed jurisdiction over RDC's affairs because a majority of RDC's general partners were in agreement following Harold's death, thereby eliminating any deadlock that would have formed the basis of the trial court's statutory authorization to conduct a judicial dissolution of RDC. I.C. § 23-16-9-2 governs the judicial dissolution of limited partnerships. In relevant part, the statute provides as follows:

> On application by or for a partner, the circuit or superior court of the county in which the office of the limited partnership […] is located may decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement.

Harold, as one of two then general partners of RDC, filed his Application for RDC's judicial dissolution, winding up, as well as an accounting. Relying upon the statutory language in I.C. § 23-16-9-2, Count I alleged that "irreconcilable differences regarding the conduct of RDC's business and the furtherance of the purposes for which it was formed, render[ed] it impracticable to carry on RDC business in conformity with the Partnership Agreement." (Appellants' 60 (B) App. p. 88). Harold later filed the Amended Application which particularly alleged breaches of fiduciary duty by Helen, Thomas, Robert, Herbert, and Timothy.

21

Although the deaths of Harold and Helen along with the succession of Thomas, Robert, and Herbert eliminated management deadlock as between RDC's general partners, we cannot agree that the phrase "not reasonably practicable to carry on the business in conformity with the partnership agreement" is limited solely to management deadlock. I.C. § 23-4-1-32, made applicable to limited partnerships by I.C. § 23-16-12-3, provides that the trial court must decree dissolution if "[a] partner willfully or persistently commits a breach of the partnership agreement, or otherwise acts in matters relating to the partnership business so that it is not reasonably practicable to carry on the business in partnership with that partner." I.C. § 23-4-1-32(1)(d). Thus, a breach of fiduciary duty may also make it impracticable to carry on the business of the partnership. Furthermore, although I.C. § 23-16-9-2 is not specific as to who may seek judicial dissolution, a limited partner may impliedly do so since another provision of the IRULPA specifies that a limited partner does not forfeit his or her limited liability by proposing the "dissolution and winding up of the limited partnership." I.C. § 23-16-4-3(b)(6)(A).

In light of the foregoing, we see no reason why Hal, either as general or limited partner of RDC, or even the other limited partners from Harold's side, could not continue RDC's judicial dissolution proceedings. Consequently, we reject Appellants' arguments that the trial court has no jurisdiction over RDC's affairs under I.C. § 23-16-9-2. We note, however, that the trial court added Hal, along with two other Appellees in their capacity as executors of Harold's estate, to the dissolution action. Harold's estate is not a limited partner because Harold's partnership interest passed upon his death to the Harold

22

G. Rueth Residuary Trust. As a result, we reverse the trial court's addition of Harold's estate as a party to the dissolution proceedings.[5]

### B. *Derivative Action*

Appellants also contest the trial court's determination that Appellees be permitted to continue these proceedings as a derivative action under I.C. § 23-16-11-1. Appellees' T.R.60 (B) motion requested the trial court to permit them to pursue breach of fiduciary duty claims against Appellants in a derivative action based upon their contention that Harold pursued such claims on their behalf. The trial court concluded that Harold had previously championed rights on Appellees' behalf and ordered the matter "reinstated in order that [Appellees] can continue claims that were filed in this case by [Harold] prior to his death." (Appellants' 60(B) App. p. 83). However, because Appellees' claims do not satisfy the statutory requirements for a limited partnership derivative action and because the claims asserted by Harold in the Amended Application were brought in the context of winding up RDC's affairs and his demand for an accounting, the trial court's grant of relief is clearly erroneous.

### 1. *Ind. Code § 23-16-11-1*

---

[5] Appellants also contest the trial court's conclusion that Appellees were not afforded sufficient time to affect a party substitution following Harold's death, some 32 days before Appellants filed their stipulation of dismissal. We note that while T.R. 25(A) and (D) do not specify a time limit, the federal counterpart requires that substitution occur within 90 days. *See* Fed. R. Civ. P. 25(a)(1). We therefore find no error with the trial court's conclusion that Appellees were not afforded sufficient opportunity to effect a party substitution under T.R. 25.

I.C. ch. 23-16-11, governs derivative actions by limited partners. I.C. § 23-16-11-1 provides that "a limited partner may bring an action in the right of a limited partnership to recover a judgment in favor of the limited partnership." The limited partner must satisfy certain conditions precedent: the limited partner must show that the "general partners with authority to bring such action have refused to bring the action;" or that "efforts to cause those general partners to bring the action is not likely to succeed." *Id.* Such limited partner must also be a partner at the time of the complained of transaction. I.C. § 23-16-11-2. Further, the limited partner must affirmatively plead the foregoing conditions precedent when bringing a derivative action. I.C. § 23-16-11-3. Should the limited partner prevail, the court may award attorney fees and reasonable expenses, and in certain cases direct the limited partnership to pay part or all of the award to the prevailing limited partner. *See* I.C. § 23-16-11-4.

Here, the trial court's grant of relief did not comply with statutory requirements for a derivative action. Hal, as an RDC general partner, is excluded under I.C. § 23-16-11-1 from bringing a derivative action because the statute only permits limited partners to do so. However, this is not the end of the analysis since I.C. § 23-16-12-3 provides that for matters not addressed under the IRULPA, the provisions of I.C. § 23-4-1-1, *et seq.*, the Indiana Uniform Partnership Act (IUPA), control. There is no provision in the IUPA permitting a minority general partner (Hal) to bring a derivative claim against the majority general partners (Thomas, Robert, and Herbert). To the contrary, I.C. § 23-4-1-15(5) states that "[a] partner in a limited liability partnership is not a proper party to a

proceeding by or against the limited liability partnership, the object of which is to recover any debts, obligations, or liabilities of, or chargeable to, the partnership, unless the partner is personally liable." Thus, Harold, in his capacity as a general partner, could not bring a derivative action under I.C. § 23-16-11-1.

Appellees, in their capacity as RDC's limited partners, are also precluded from bringing a derivative action under these circumstances since I.C. § 23-16-11-3 contemplates a separate cause of action for limited partner derivative claims. Aggrieved limited partners must meet certain pleading requirements before proceeding with a derivative action. Because the trial court's grant of relief essentially dispensed with this requirement, we conclude that the trial court erred.

### 2. *Claims Asserted in the Amended Application*

To the extent that the trial court concluded that Harold's claims were derivative in nature, this was also an error because the Amended Application contains no allegations suggesting that Harold brought these claims as a derivative action under I.C. § 23-16-11-1. The Application, filed by Harold, sought RDC's dissolution, winding up of its affairs, and a demand for an accounting. In Count II, Harold sought a court appointment as liquidating trustee under I.C. § 23-16-9-3 to prosecute claims on behalf of RDC. Count III of the Application sought an accounting based upon the allegation that "[s]everal of the general and limited partners of RDC have received benefits from transactions connected with RDC [involving] transactions between RDC and [H&H], a corporation owned by some of the partners of RDC." (Appellants' 60(B) App. p. 90). The Amended

25

Application added a new Count IV which alleged particular breaches of fiduciary duty by Helen, Thomas, Robert, and Herbert. Such breaches were alleged by Harold to be "contrary to the interest of RDC, its general and limited partners, and particularly to [Harold] and the limited partners he represents." (Appellees' 60(B) App. pp. 21-22).

Although purporting to bring claims on behalf of RDC, himself, and limited partners from his line of the family, Harold's claims were asserted in the context of RDC's dissolution and are thus, in essence, claims brought during the winding up of RDC's affairs and those for an accounting. *See Dulles Corner Properties II Ltd. Partnership v. Smith*, 431 S.E.2d 309, 311 (Va. 1993). Dissolution of the partnership refers to "the change in relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." I.C. §23-4-1-29. Winding up or liquidation refers to "the process by which the business affairs of the partnership are brought to an end." 17 Paul J. Galanti, IND. PRAC. BUSINESS ORGANIZATIONS § 6.13 (1991). Specifically, I.C. § 23-16-9-3(b) provides that

> [u]pon the dissolution of a limited partnership, the persons winding up the affairs of a limited partnership may, in the name of the limited partnership and for and on behalf of the limited partnership, prosecute and defend civil, criminal, and administrative proceedings, settle and close the limited partnership's business, dispose of and convey the limited partnership's property, discharge the limited partnership's liabilities, and distribute to the partners any remaining assets of the limited partnership, all without affecting the liability of limited partners.

Further, an accounting is the traditional remedy "for a wrong done to a partner by another partner in connection with the affairs of the partnership." 17 IND. PRAC.

26

BUSINESS ORGANIZATIONS § 4.15. Under I.C. § 23-4-1-22, "[a]ny partner shall have the right to a formal account as to partnership affairs." This right accrues "against the winding-up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in absence of any agreement to the contrary." I.C. § 23-4-1-43. Yet, under Indiana law, "one partner cannot sue another to recover profits or to recover his share of the partnership assets where the partnership is unsettled." *Ruse*, 914 N.E.2d at 8 n.3. Further, "the proper action to recover profits or losses based on partnership business is to sue in equity for an accounting and for a recovery of whatever may be found due upon a settlement of the partnership affairs." *Butler v. Forker*, 221 N.E.2d 570, 605 (Ind. Ct. App. 1966).

Despite the language in the Amended Application indicating that Harold sought recovery for breaches of fiduciary duty, Harold was at all times a general partner of RDC. Relying on I.C. § 23-16-9-2, Harold sought to be appointed liquidating trustee and in that context be able to assert claims on behalf of RDC. Thus, it is clear that he was merely asserting his right to an accounting and would be prosecuting claims against H&H and Thomas, Robert, and Herbert within the context of winding up RDC's affairs.

Accordingly, we conclude that the trial court abused its discretion by permitting Appellees to continue the dissolution proceedings as a derivative action under I.C. § 23-16-11-1 because the statutory requirements for a derivative action have not been met and because the nature of claims asserted by Harold were those brought within the context of winding up RDC's affairs and an action for an accounting. At the same time, this does

not mean that Hal and the other Appellees are left without a remedy, since we have already concluded that they may participate in the proceedings for RDC's judicial dissolution, winding up, and assert their right to an accounting.

## V. *Preliminary Injunction*

Appellants also appeal the trial court's November 16, 2011 Order enjoining capital distributions without the consent of all general partners and mandating that if RDC pays Appellants' attorney fees, it must also pay Appellees' attorney fees in an equal amount. Specifically, Appellants claim that Appellees' motion for a temporary restraining order (TRO) and preliminary injunction failed to comply with procedural prerequisites. Additionally, Appellants assert that the trial court's November 16, 2011 Order was substantively and procedurally flawed under T.R. 65 because Appellees did not establish grounds warranting an injunction, the trial court issued the injunction without findings of fact under T.R. 52(A), and did so without ordering Appellees to furnish security.

Preliminary injunctions are generally used to preserve the *status quo* as it existed before a controversy, pending a full determination on the merits of the dispute. *Stoffel v. Daniels*, 908 N.E.2d 1260, 1272 (Ind. Ct. App. 2009). The issuance of a preliminary injunction is a matter which lies within the discretion of the trial court. *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 117 (Ind. Ct. App. 2004). To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence the following: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the

potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *See id.* at 117-18. If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Stoffel*, 908 N.E.2d at 1272.

When determining whether or not to grant a preliminary injunction, under T.R. 52(A) the trial court is required to make special findings of fact and state its conclusions thereon. *Avemco Ins. Co.*, 812 N.E.2d at 117. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, *i.e.*, when the judgment is unsupported by the findings and the conclusions entered on those findings. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider the evidence only in the light most favorable to the judgment. *Id.* We also construe the findings liberally in favor of the judgment. *Id.*

Preliminary injunctions and temporary restraining orders are governed by T.R. 65, which provides in relevant part:

(A) Preliminary injunction.

(1) Notice. No preliminary injunction shall be issued without an opportunity for a hearing upon notice to the adverse party.

[…]

(B) [TRO]--Notice--Hearing--Duration. A [TRO] may be granted without written or oral notice to the adverse party or his attorney only if:

29

(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and

(2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required.

[…]

(C) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. […].

[…]

(D) Form and scope of injunction or restraining order. Every order granting temporary injunction and every restraining order shall include or be accompanied by findings as required by [T.R.] 52; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

The November 16, 2011 Order expressly denied Appellees' motion, yet ordered injunctive relief. To better understand the nature of the Order and the parties' contentions, we first review proceedings prior to issuance of the November 16, 2011 Order. On November 8, 2011, Appellees filed their verified motion for a TRO without notice and application for preliminary injunction. The trial court conducted a hearing, attended by counsel for both parties, around 10:30 a.m. the same day. Prior to the

hearing, at 9:01 a.m., Appellees' counsel emailed correspondence to Appellants' counsel to notify him of their intent to seek injunctive relief based on the sale of the Briar Ridge Country Club. The email apprised Appellants' counsel of the date, time, and court where the motion would be heard. Although Appellees' counsel's signature page was omitted from the motion, the attached certification attested to his attempts to notify Appellants' counsel despite urging that notice was not required for a TRO. Thereafter, Appellees' counsel signed a CCS entry form showing the motion filed on November 8, 2011, providing his name and contact information, and including a certificate of service on Appellants' counsel.

Both sides appeared at the hearing and presented arguments to the trial court. Appellees sought to enjoin Appellants from any distribution of the Briar Ridge Country Club sales proceeds and for the sales proceeds to be paid into court. Appellees believed that in light of the June 22, 2001 Order finding Thomas, Robert, and H&H liable to RDC, Thomas, Robert, Herbert, as general partners, might dissipate RDC's assets through capital distributions. However, Appellees' counsel could not specify when the sale proceeds would be paid to RDC and Appellants' counsel pointed out that litigation over the sale was pending before another court. As a result, the trial court disagreed with Appellees that they would suffer irreparable harm if the TRO or preliminary injunction were not granted, concluding that Appellees could seek monetary damages for any impropriety made by Thomas, Robert, or Herbert.

31

However, Appellants' counsel offered the following resolution to the dispute in open court:

> [APPELLANTS' COUNSEL]: We've offered [Appellees' counsel] an agreement, and I would rather not put it o[n] record, but I don't mind telling the [c]ourt. We will agree not to make any distributions. We have made substantial distributions in the past, and they're all by agreement. No one said, no, I don't want the money; no, you shouldn't take; no, you shouldn't be distributing these funds.
>
> […]
>
> [APPELLANTS' COUNSEL]: We would propose that if no distribution is to be made in the future unless all four of them agree to it.
>
> [TRIAL COURT]: That's what I would be likely to say.
>
> [APPELLANTS' COUNSEL]: There's no problem with that. Distributions --

(Injunction Transcript pp. 16-17).

The parties also argued whether RDC may pay attorney fees for Appellants' counsel. Appellees' counsel argued that following the trial court's October 2, 2008 Order for dismissal, RDC paid Appellants' attorney fees yet refused to pay Appellees' legal fees. In light of the June 22, 2001 Order and the trial court's April 6, 2011 Order reinstituting dissolution proceedings, Appellees requested that no additional attorney fees related to RDC's dissolution be paid from RDC's funds. The trial court noted that Helen and Harold had agreed that attorney fees for both sides be paid by RDC. However, it also found that RDC needed to pay attorney fees to prosecute its litigation involving the Briar Ridge Country Club sale. As a result, the trial court ordered that no attorney fees be paid

to Appellants' counsel without an equal amount paid to Appellees' counsel as they pertain to the dissolution action.

We cannot agree that the trial court abused its discretion in issuing the November 16, 2011 Order. Appellees sought a TRO accompanied by an application for a preliminary injunction. After determining that Appellees had not established grounds entitling them to a TRO, the trial court denied the motion except as specifically ordered. Regarding notice, while Appellees' counsel's notice to Appellants' counsel approximately one hour before the hearing is not commendable, Appellants in fact received notice and appeared at the hearing. *See Harlan Bakeries, Inc. v. Muncy*, 835 N.E.2d 1018, 1039-40 (Ind. Ct. App. 2005).

Further, whatever procedural irregularities existed regarding Appellees' failure to file a certificate or omission of the signature page, these did not rise to the level of prejudicial error given both parties' attendance at the hearing and the fact that such procedural irregularities were not asserted during the hearing. *See Teperich v. North Judson-San Pierre High School Bldg. Corp.*, 275 N.E.2d 814, 817 (Ind. 1971), *cert. denied*, 407 U.S. 921 (1972). Also, a failure to require the posting of a security bond pursuant to Trial Rule 65(C) is an insufficient reason to void an injunction. *Pickett v. Pelican Serv. Assocs.*, 481 N.E.2d 1113, 1120 (Ind. Ct. App. 1985), *trans. denied*.

In essence, Appellants were not prejudiced by the trial court's grant of the preliminary injunction in this case. The hearing transcripts reflect that Appellants actually proposed the relief granted by the trial court, *i.e.*, that no further distributions be

33

made without all partners' consent. Following the trial court's ruling, the trial court ordered both parties to prepare proposed orders for the trial court's adoption and Appellants' version was adopted virtually verbatim in the November 16, 2011 Order. Thus, by stipulating to the relief granted in the preliminary injunction, Appellants are estopped from claiming that it was improperly granted. *See Hay v. Baumgartner*, 903 N.E.2d 1044, 1049 (Ind. Ct. App. 2009).

Furthermore, we characterize that portion of the November 16, 2011 Order addressing attorney fees as an interim Order reinstituting the trial court's earlier order on attorney fees. While Appellants challenge the trial court's findings regarding attorney fees as insufficient, they do not address whether Appellees established a *prima facie* case regarding attorney fees. *See Avemco Ins. Co.*, 812 N.E.2d at 118. In any event, these findings are sufficient under T.R. 52(A). Consequently, we find that the trial court did not abuse its discretion by granting the preliminary injunction.[6]

## CONCLUSION

Based upon the foregoing, we conclude that (1) the trial court did not abuse its discretion by granting Appellees relief under T.R. 60(B); (2) the trial court abused its discretion in allowing Appellees to pursue their claims as a derivative action; and (3) the trial court did not abuse its discretion by granting a preliminary injunction on capital distributions and payment of attorney fees.

---

[6] The remainder of Appellants' arguments represent a second attempt to contest the merits of the trial court's April 6, 2011 Order vacating the dismissal of RDC's dissolution action. As we have already addressed these matters, we will not address them in the context of the injunction.

Affirmed in part, reversed in part, and remanded with instructions to the trial court to continue dissolution proceedings.

NAJAM, J. and DARDEN, S. J. concur